638 A.2d 455

SAS, INC., (One 1983 Ford Truck, Twenty One–Half Barrels of Beer; and 1982 Peterbilt Walk–In Sleeper Tractor and One 1969 Fruehauf Trailer and One 1969 Fruehauf Stainless Steel Refrigeration Unit), Appellant,

v.

COMMONWEALTH of Pennsylvania, STATE POLICE, BUREAU of LIQUOR CONTROL ENFORCEMENT.

BREWERY PRODUCTS COMPANY, (One 1983 Ford Truck, 20 One–Half Barrels of Beer; 1982 Peterbilt Walk–In Sleeper Tractor and One 1969 Fruehauf Trailer; One 1969 Fruehauf Stainless Steel Refrigeration Unit), Appellant,

v.

COMMONWEALTH of Pennsylvania, STATE POLICE, BUREAU of LIQUOR CONTROL ENFORCEMENT.

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 1993.

Decided Feb. 28, 1994.

Reargument Denied April 7, 1994.

264

Patrick M. McHugh, for appellants in case 312 C.D.1993.

Robert M. Strickler, for appellants in case 396 C.D.1993.

Thomas M. Ballaron, Asst. Counsel, for appellee.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

SAS, Inc. (SAS) and The Brewery Products Company (BPC) have filed consolidated appeals from an order of the Court of Common Pleas of Franklin County (trial court) granting the petitions for forfeiture filed by the Pennsylvania State Police, Bureau of Liquor Control Enforcement (BLCE) of SAS' 1982 Peterbilt Tractor and 1969 Fruehauf refrigerated trailer and BPC's 1983 Ford pick-up truck.

On September 12, 1992, the Greencastle American Legion Post 373 (American Legion) held its bi-annual picnic at its picnic grounds in Antrim Township. Antrim is a "dry" township and the sale of beer is prohibited.[1] The American Legion

1. The American Legion, which is located at 254 South Carlisle Street in Greencastle, does have a catering club liquor license; however, that

charged a $10 admission fee which included the costs of a raffle ticket, dinner and refreshments. Although it also was providing beer for its members and other patrons, it told them that the beer was free and not part of the cost of admission.

As a result of complaints received by the BLCE that beer was being sold at the picnic, two State Liquor Enforcement Officers (Officers) went to the picnic and were met at the entrance to the grounds by two men selling tickets. The Officers were told that the price of admission included dinner, refreshments and a raffle ticket. They, too, were told that the beer was free. However, when one of the Officers indicated that he was only interested in the free beer, he was told he had to purchase a ticket or would not be admitted. The two Officers purchased tickets and proceeded into the picnic grounds where they observed people serving themselves beer from taps on a 1983 Ford pick-up truck and a specially built refrigerated tractor-trailer equipped with eight beer taps for on-site dispensing.

After the two Officers alerted their back-up that beer was being sold at the picnic, a police raiding detail arrived and a speakeasy raid was conducted. The BLCE seized the following:

| Property | Owner |
|---|---|
| • 1983 Ford pick-up truck valued at $15,000; equipped with mounted refrigeration unit containing storage area and tap systems for dispensing beer | BPC, a licensed beer importing distributor |
| • 1982 Peterbilt tractor and 1969 Fruehauf trailer valued in excess of $100,000; equipped with storage area for beer containing 68 half kegs | SAS, a leasing company of specialty trucks for the dispensing of alcoholic beverages |
| • 20 half kegs of beer | Chambersburg Beverage, Inc. |

SAS leased its tractor-trailer to Sheffer Beer Distributing (Sheffer) who supplied most of the beer in the tractor-trailer upon the request of T.A. Zullinger, Inc. (Zullinger), a licensed Chambersburg area beer distributor. SAS and Sheffer are located on the same premises and the same individual is the president of both corporate entities. BPC leased its pick-up truck to Chambersburg Beverage who had been contacted by the American Legion.

license only permits them to sell alcoholic beverages within that licensed premises.

All three owners filed motions for the return of their property pursuant to Pa.R.Crim.P. 324.[2] In response to those motions, the BLCE filed three petitions for forfeiture or condemnation pursuant to Section 602 of the Liquor Code,[3] 47 P.S. § 6–602(a). In all three cases, it argued that the owners knew or should have known that their vehicles and beer were being used for the unlawful sale and dispensing of beer in violation of Section 492(2) of the Liquor Code, 47 P.S. § 4–492(2).[4] The BLCE then filed motions to consolidate the hearings on BPC's, SAS' and Chambersburg's motions for the return of their property, and the three forfeiture petitions.

Because none of the parties disputed that illegal beer sales were made at the picnic, the trial court had to determine whether it should, in its discretion, order a forfeiture of the property based on whether the owners had knowledge that their property would be used for an illegal purpose. The trial court heard testimony from Susan Weitzel (Weitzel), the Vice–President of BPC; Gary Gross (Gross), the fleet-manager for SAS; Ann Bumbaugh (Bumbaugh), the office manager for Chambersburg Beverage, Inc.; and Robert Wentz (Wentz),

**2.** That rule provides that a person who is aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of property on the ground that he is entitled to lawful possession.

**3.** Act of April 12, 1951, P.L. 90, *as amended.* That section provides that the proceedings for the forfeiture or condemnation of all property shall be in rem, in which the Commonwealth shall be the plaintiff and the property the defendant. A petition shall be filed in the court of common pleas, verified by oath or affirmation of any officer or citizen, containing the following: (1) a description of the property so seized; (2) a statement of the time and place where seized; (3) the owner, if known; (4) the person or persons in possession, if known; (5) an allegation that the same had been possessed or used or was intended for use in violation of this act; (6) and, a prayer for an order of forfeiture that the same be adjudged forfeited to the Commonwealth, unless cause be shown to the contrary.

**4.** That section provides that it shall be unlawful for any person to sell to another for consumption upon the premises where sold or to permit another to consume upon the premises where sold, any malt or brewed beverages, unless such person holds a valid retail dispenser license or a valid liquor license issued by the board authorizing the sale of malt or brewed beverages for consumption upon such premises.

the driver of the pick-up truck who was employed by Sheffer Beer. Only Bumbaugh testified that she was aware that admission tickets were being sold at the picnic where the beer was being dispensed. She further testified that she was aware of the forfeiture of a pick-up truck by Chambersburg Beverage in 1990 for the same reason. Weitzel testified that she did not know that Antrim was a dry township and was never asked whether she was aware that tickets were being sold. Gross testified that he did not know where the picnic was being held, and also was not asked whether he was aware that tickets were being sold. Wentz testified that he knew his destination but did not know tickets were being sold.

After hearing all the testimony, the trial court made the following determinations: regarding the beer in the 20 half-barrels owned by Chambersburg Beverage, Inc., which was transported to the picnic and served from the pick-up truck, the trial court determined that it had no discretion as to whether it should be forfeited because Section 601 of the Liquor Code, 47 P.S. § 6–601, requires mandatory forfeiture of malt or brewed beverages which are unlawfully used or possessed.[5] As to the individual barrels in which the beer was contained in the tractor-trailer, it found that even though Chambersburg Beverage was in the business of selling alcoholic beverages and should have been aware of the Commonwealth's liquor regulations, no one from that company ever inquired as to the status of licensure at the picnic grounds. Further, because Chambersburg Beverage had previously had a truck forfeited in 1990 for the illegal sale of beer at an unlicensed premises in Greencastle, it granted the BLCE's forfeiture petition.

5. That section provides:

> No property rights shall exist in any liquor, alcohol or malt or brewed beverage illegally manufactured or possessed, or in any still, equipment, material, utensil, vehicle, boat, vessel, animals or aircraft used in the illegal manufacture or illegal transportation of liquor, alcohol or malt or brewed beverages, and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may be instituted in the manner hereinafter provided. No such property when in the custody of the law shall be seized or taken therefrom on any writ of replevin or like process.

Regarding the 1983 Ford pick-up truck, the trial court accepted as credible the testimony of Weitzel that she had no actual knowledge of the illegal use of BPC's specialty pick-up truck at the picnic. Because BPC, a licensed beer distributor, allowed its specially equipped beer dispensing pick-up truck to be used without making inquiries as to whether the use of its vehicle was legal, the trial court held that BPC had an obligation to make some effort to determine whether its vehicle was being used for legal purposes and granted the BLCE's forfeiture petition for the pick-up truck as well.

 As to the tractor-trailer, the trial court noted that even though there was a substantial difference in value between it and the pick-up truck, the same analysis applied to SAS. It also had not inquired into the use of its specially equipped vehicle, which was designed to dispense large quantities of alcoholic beverages in a mobile fashion. Further, SAS was not merely in the business of leasing tractor-trailers, but was in the specific business of leasing its specialty trucks to alcoholic beverage customers for the convenient dispensing of those alcoholic beverages. After granting the BLCE's petition for forfeiture of the tractor-trailer, the trial court directed the Franklin County Sheriff to destroy all of the forfeited beer and deliver the pick-up truck and tractor-trailer to the Pennsylvania State. Police, Bureau of Liquor Control Enforcement for disposition. Only BPC and SAS filed appeals with this court from the trial court's granting of the BLCE's petitions for forfeiture of the pick-up truck and tractor-trailer.[6]

In a forfeiture proceeding under Section 602(e) of the Liquor Code, 47 P.S. § 6–602(e) the burden is on the Commonwealth to prove that the property in question was illegally

6. Whether a petition for forfeiture should be granted is a matter of discretion for the trial court. Our scope of review then is limited to determining whether the trial court abused its discretion in granting the petition. *Pennsylvania Liquor Control Board v. One 1972 Ford Pickup Truck, MFG. Serial No. F25YCP22520,* 49 Pa.Commonwealth Ct. 600, 411 A.2d 892 (1980). Discretion is abused when, in reaching its conclusion, the trial court departs from or misapplies the law or the judgment it exercises is manifestly unreasonable as shown by the evidence of record. *Hainsey v. Pennsylvania Liquor Control Board,* 529 Pa. 286, 602 A.2d 1300 (1992).

used. Once that is proven, the burden shifts to the property owner to prove that he is the owner of the property, he legally acquired the property, and that the property was not illegally used. Section 6–602(e) of the Liquor Code provides:

At the time of said hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed.

In the event such claimant shall prove by competent evidence to the satisfaction of the court that said liquor, alcohol or malt or brewed beverage, or still, equipment, material, utensil, vehicle, boat, vessel, container, animal or aircraft was lawfully acquired, possessed and used, then the court may order the same returned or delivered to the claimant; but if it appears that said liquor, alcohol or malt or brewed beverage or still, equipment, material or utensil was unlawfully possessed or used, the court shall order the same destroyed, delivered to a hospital, or turned over to the board or enforcement bureau, as hereinafter provided, or if it appears that said vehicle, boat, vessel, container, animal or aircraft was unlawfully possessed or used, the court *may, in its discretion,* adjudge same forfeited and condemned as hereinafter provided.

As part of the trial court exercising its discretion regarding a property owner who has no knowledge that his property has been used illegally, our Supreme Court in *Commonwealth v. Two Electronic Poker Game Machines,* 502 Pa. 186, 200, 465 A.2d 973, 980 (1983) held:

Of course, since it [the trial court] has discretion, if the owner produces evidence that he has no knowledge of illegal use, the trial court must be persuaded by that evidence; otherwise it may, in its discretion, impose forfeiture. Moreover, in exercising its discretion the trial court *should not allow the owner to close his eyes to facts which should put him on notice of illegal use.* (Emphasis added.)

SAS and BPC contend that unless they knew their equipment was going to be used improperly, it should not be subject to forfeiture because there is no requirement that they investigate how their property will be used. In any event, they argue that they made the necessary inquiry because they ascertained the licensure status of the American Legion and they relied on the fact that it was properly licensed before agreeing to allow the American Legion to use their vehicles. Because the American Legion was licensed, there was no reason to suspect illegal activity at the picnic. They further argue that there was nothing unusual about a club[7] conducting a picnic, and the quantity of beer sold was not unreasonable for the apparent lawful purpose which the American Legion represented itself to be conducting. The BLCE, however, argues that while SAS and BPC were not aware that their vehicles would be used to dispense beer being sold in a dry township, they were aware that large quantities of beer would be dispensed at the picnic, and that the picnic was a location other than that for which the American Legion was licensed. As such, by failing to inquire into the use of their vehicles, the BLCE argues that SAS and BPC had effectively closed their eyes to facts which should have put them on notice of the illegal use.

A determination as to whether a licensee has "closed his eyes" to the facts is made by examining the facts known to him at the time the property at issue was committed to the illegal use. While the licensee is not obligated to seek out facts and fully investigate if his property will be used in a lawful manner, if facts known at the time the use of the property was requested would lead a reasonable person to believe that further inquiries were necessary, then the licensee would be obligated to make those inquiries. Because all aspects of the liquor industry are regulated, a licensee is

7. Section 102 of the Liquor Code, 47 P.S. § 1–102, defines "club" in pertinent part as any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor or malt and brewed beverages shall only be secondary.

assumed to know when, where and to whom liquor may be sold.

In this case, SAS and BPC knew that when Sheffer and Chambersburg requested the use of their tractor-trailer and pick-up truck respectively, the American Legion was hosting a picnic, a large quantity of beer was going to be dispensed, and it was going to be dispensed at a location different from the American Legion's Greencastle facility. Based on that last fact alone, the trial court properly found they should have been alerted that there was the potential for the illegal usage of their equipment because even though they believed the American Legion was a properly licensed customer of both Sheffer and Chambersburg Beverage for sales at its Greencastle facility, if the beer was to be sold at another location other than its licensed facility, the American Legion would have been required to obtain a "special occasion permit" for its picnic.

Pursuant to Section 408.4 of the Liquor Code,[8] 47 P.S. § 4-408.4, a "special occasion permit" will be issued by the Liquor Control Board for a special event such as a picnic in a township which approves the sale of beer upon application and payment of a fee by specified clubs in existence for at least 10 years. Had SAS and BPC made an inquiry and found out that the American Legion did not obtain such a permit, they would have at least been aware that the American Legion was not permitted to sell beer in Antrim Township.[9] They then would have been required to inquire if beer was going to be sold at the picnic.

We note that if SAS and BPC had been assured by Sheffer and Chambersburg Beverage or the American Legion that sales of beer would not take place at the picnic, and later it

---

**8.** This section was added to the Liquor Code by Act of May 12, 1972, P.L. 291, *as amended.*

**9.** Section 4-408.4(e) continues to state that the provisions of this section shall not be applicable to any licensee possessing a caterer's license. Because the American Legion possesses a club catering license, even if Antrim had not been a dry township, it would not have been able to obtain such a permit.

was determined that illegal sales had taken place, SAS and BPC would be insulated from any forfeiture action for failure to make the necessary inquiries to protect their property from being used illegally. However, because no inquiries were made and because SAS and BPC were alerted that there was a potential for illegal usage of their equipment, their vehicles were forfeitable.

■ Even if their property was properly forfeitable, SAS and BPC argue that the forfeiture of their vehicles valued at $100,000 and $25,000 respectively, was disproportionate to the violation and constituted an excessive fine which is prohibited by the Eighth Amendment to the United States Constitution,[10] citing *Austin v. United States*, 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and recently applied by our Supreme Court in *In re: King Properties*, 535 Pa. 321, 635 A.2d 128 (1993).[11]

In *King*, the Commonwealth filed a petition for forfeiture of King's house under the Controlled Substance Forfeiture Act, 42 Pa.C.S. § 6801(a)(6)(i)(C), after two searches of his home uncovered 12 to 14 grams of cocaine, drug paraphernalia and $8,655 in cash. Our Supreme Court found that because King was involved in an ongoing drug business for which he used his house as a base of operations, there was a significant connection between the criminal conduct, and the house and forfeiture was appropriate:

> [In] determining whether a forfeiture is an excessive fine, and therefore disproportionate, the inquiry does not concern the value of the thing forfeited, but the relationship of the offense to the property which is forfeited. If the forfeited property was significantly used in the commission of the offense, the item may be forfeited regardless of its value.

10. The Eighth Amendment specifically provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

11. Of note, neither party has raised the issue of whether these cases are applicable because of Section 2 of the 21st Amendment to the United States Constitution.

> Where the evidence is that the criminal incident on which the forfeiture is based is not part of a pattern of similar incidents, there is no "significant" relationship between the property sought to be forfeited and the offense. Otherwise, significant property interest might become forfeit based on an unusual and unaccustomed incident.

Our Supreme Court continued to state that it is the Commonwealth's burden to prove a relevant pattern of criminal conduct by establishing through clear and convincing evidence that the criminal conduct is not a one-time occurrence.[12]

As noted by our Supreme Court, it is not the value of the vehicles forfeited that determines whether the forfeiture was excessive, but rather whether there was a pattern of conduct by SAS and BPC that they allowed their vehicles to be used for the dispensing of illegally sold beer. While the trial court did mention that BPC had previously forfeited a pick-up truck in 1990 for the same reason, it did not assess whether that constituted a pattern of conduct or if any other similar events had occurred in the past. It also did not determine whether there was a pattern of similar incidents with SAS. As such, we cannot determine whether the forfeiture of those vehicles was excessive.

Consequently, the trial court's order is vacated and the case remanded to the trial court so that it may make further findings in accordance with this opinion.

## ORDER

AND NOW, this 28th day of February, 1994, the order of the Court of Common Pleas of Franklin County, dated January 13, 1993, is vacated and the case remanded to that court to make findings consistent with this opinion.

Jurisdiction relinquished.

12. It further noted that circumstantial evidence could be used to prove this burden.

McGINLEY, Judge, dissenting.

I respectfully dissent. A remand in the present case is unnecessary because the record indicates only one prior forfeiture (of a pickup truck) on the part of BPG and no prior forfeitures on the part of SAS. This is insufficient to establish a pattern of conduct that would indicate that either BPG or SAS has intentionally allowed their vehicles to be used for illegally dispensing beer. Accordingly, I believe the forfeiture of the vehicles, valued at more than $100,000.00, to be an excessive fine and prohibited by the Eighth Amendment. I would reverse.