664 A.2d 888

George Joseph ARAVANIS

v.

SOMERSET COUNTY.

No. 22, Sept. Term, 1994.

Court of Appeals of Maryland.

Sept. 13, 1995.

Andrew M. Dansicker, Washington, DC (Deborah A. Jeon, ACLU Foundation of Maryland, on brief), Centreville, for appellant.

Logan C. Widdowson, State's Attorney (Robert E. Laird, Jr., Assistant State's Attorney for Somerset County, Charles A. Bruce, Jr., Jack A. Willing, Jr., Jones & Bruce, P.A., all on brief), Princess Anne, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, BELL, RAKER, and JOHN F. McAULIFFE, Judge of the Court of Appeals (Retired and Specially Assigned), JJ.

BELL, Judge.

We granted certiorari to consider whether Maryland's drug forfeiture statute, Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 297, is subject to an excessive fines analysis pursuant to the Eighth Amendment of the United States Constitution,[1] and/or its Maryland counterpart, Article 25 of the Maryland Declaration of Rights.[2] We are also invited, should we find the analysis appropriate, to formulate a test for determining when a particular forfeiture is unconstitutionally excessive. We shall hold that civil *in rem* forfeitures are subject to an excessive fines analysis. Therefore, we shall reverse the trial court's judgment.

## I.

George Joseph Aravanis, the appellant, and his wife took title to a farm, including a house, located at 5341 Shelltown Road in Westover, Somerset County, Maryland, as tenants by the entireties, on December 31, 1971. They occupied the property while raising their children until they separated and Mrs. Aravanis moved out. Aravanis continued to occupy the property until they were divorced in 1988. Thereafter, in 1991, a part of the property was sold. The appellant obtained sole title to that portion remaining after the sale. At the same time, he acquired approximately $16,000.00 as his share of the

---

**1.** The Eight Amendment provides:
    Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

**2.** Article 25 provides:
    Excessive bail, fines and punishment.
    That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law.

proceeds of the sale. He used part of that amount to purchase marijuana for sale.

A search of the appellant's property was conducted pursuant to a search and seizure warrant[3] on July 2, 1991. As a result of that search, approximately two pounds of marijuana were seized from a gas barbecue grill located outside the house. Paraphernalia, *i.e.* items commonly used in the drug trade for weighing and packaging drugs, *see* Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 286(a)(4), consisting of sandwich baggies, found in a bedroom bureau drawer, and a set of triple beam scales were also seized. Forty-two marijuana plants, ranging in height from five to six feet, were discovered about 150–200 yards north of the residence, but adjacent thereto. The trial court did not consider these plants as evidence supporting forfeiture since the plants apparently were not located on the appellant's property.

The appellant pled guilty to one count of possession of a controlled dangerous substance in sufficient quantity to indicate an intent to manufacture, distribute, or dispense pursuant to Article 27, § 286.[4] He was sentenced to five years impris-

---

**3.** In the Application for Search Warrant, the affiant assured:

1. During the three years previous to the search and seizure, various informants and citizens alleged that the appellant was involved in trafficking large quantities of marijuana and other drugs from the property.
2. Various family members stated that the appellant had been a user and distributer of drugs for many years.
3. The application affiant was given a large quantity of marijuana from one of the family members, who stated that the marijuana had come from the appellant's home.
4. Two other individuals stated that they had purchased large quantities of marijuana on three or four occasions from the appellant.
5. A confidential informant stated that he/she had purchased marijuana from the appellant on many occasions in the past.
6. At least fifteen vehicles were observed by the affiant going to and from the appellant's residence, only to stay for a short time and leave.
7. Two purchases of marijuana from the residence took place during the week of June 23, 1991 and June 30, 1991.

**4.** Maryland Code (1957, 1992 Repl.Vol.), Article 27, Section 286 provides, in pertinent part:

onment, three and one-half years of which were suspended.[5] Thereafter, the appellee filed a petition to forfeit Aravanis's property.

At the forfeiture trial, the appellee relied upon the application and affidavit for the search and seizure warrant, detailing two controlled buys from the appellant's property, the return showing that 2½ pounds of marijuana and drug paraphernalia were discovered on the property, and the appellant's guilty plea to possession of marijuana with intent to distribute.

Appearing *pro se,* the appellant maintained that the appellee failed to establish, by clear and convincing evidence, that (1) he acquired the real property in question during the period he was violating § 286 and (2) there was no other source for the acquisition of the property, as required by § 297(*l*).[6] On the

_____

Unlawful manufacture, distribution, etc.; counterfeiting, etc.; manufacture, possession, etc., of certain equipment for illegal use; keeping common nuisance.

(a) Except as authorized by this subheading, it is unlawful for any person: (1) To manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance.

5.  The appellant was originally charged with three other counts:
    (1) Possession of a Controlled Dangerous Substance,
    (2) Controlled Dangerous Substance Paraphernalia/Use or Possession and
    (3) Maintaining a Common Nuisance.
    These counts were Nolle Prossed upon the trial court's acceptance of the appellant's guilty plea.

6.  Section 297(*l*), in pertinent part, provides:
    *Presumption of ownership of property.—*
    (1) Except as provided in paragraph (2) of this subsection, when the State establishes by clear and convincing evidence that a person has committed a violation of Article 27, § 286, § 286A, § 286B or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses, there is a rebuttable presumption that any property or any portion thereof in which that person has an ownership interest is subject to forfeiture as proceeds if the State establishes by clear and convincing evidence that:
        (i) The property was acquired by such person during the period in which such person had committed violations of Article 27, § 286, § 286A, § 286B, or § 286C of the Code, or Article 27, § 290 of the

other hand, the appellee argued that the forfeiture was controlled by § 297(m).[7] It maintained that § 297($l$) applies only when there are questions as to ownership, and legislative presumptions thereof. It is inapplicable in this case, the appellee asserts, because there is no doubt that the appellant owned the property in question. The trial court agreed. Stating, "there is no doubt that Aravanis owns the real property in question," it determined that subsection (1) was inapplicable as it is "directed towards establishing an ownership in property for which there is no tangible evidence of ownership, *e.g.*, a deed, motor vehicle title or a bill of sale." Memorandum Opinion and Order at 5.[8]

---

Code in relation to these offenses, or within a reasonable time after such period; and

(ii) there was no likely source for such property other than the violation of Article 27, § 286, § 286A, Section 286B, or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses.

(2) Except as provided in subsection (n)(2) of this section, real property used as the principal family residence may not be forfeited under this subsection unless it is shown that one of the owners of the real property was convicted of one or more of the offenses described under paragraph (1) of this subsection.

(3) The burden of proof is on a claimant of the property to rebut the presumption in paragraph (1) of this subsection.

7. Section 297(m) provides:

(m)(i) Forfeiture of interest in real property.—(1) Except as provided in subsection ($l$) of this section and paragraph (2) of this subsection, an owner's interest in real property may be forfeited if the real property was used in connection with a violation of Article 27, § 286, § 286A, § 286B, or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses.

(ii) An owner's interest in real property may not be forfeited for a violation of Article 27, § 287, or § 287A of the Code.

(2) Except as provided in subsections ($l$)(2) and (n)(2) of this section, real property used as the principal family residence by a husband and wife and held by the husband and wife as tenants by the entirety, and which was used in connection with a violation of Article 27, § 286, § 286A, § 286B, or § 286C of the Code, or Article 27, § 290 of the Code in relation to these offenses, may not be forfeited unless both the husband and wife are convicted of one or more of these offenses.

8. Recently, in *1986 Mercedes Benz, 560 CE v. State,* 334 Md. 264, 638 A.2d 1164 (1994), we construed § 297($l$). We there said:

The appellant maintained that he had lived on his property for over twenty years, but had dealt drugs for only two months. Therefore, he argued that forfeiture of his property was excessive: the "penalty is far beyond the . . . crime" and "for this state or this country to take a man's home . . . for a few months of illegal activity, is not right." Maintaining that forfeiture was punishment, the appellee argued that it was intended to be harsh. Neither it nor the appellant presented any other evidence concerning the value of either the subject property or of the marijuana seized or as to any other factor bearing on the fairness of the forfeiture. Concluding that "[t]here is no question that the real property at Shelltown Road was used in connection with the distributing and dispensing of marijuana," the court believed that it had no discretion to do anything except order forfeiture. It reasoned that its "only responsibilities are to determine if any statutory exceptions apply . . . and whether there has been an adherence to due process. . . ." Opinion and Order of the Court at 9. The court found no exceptions applied and that due process had been met. In doing so, the court acknowledged the harshness of the forfeiture, particularly the subject one, as it relates to the appellant. Nevertheless, it was satisfied that it was justified in light of the legislative intent of Maryland's drug statutes, including § 297. The court pointed out that the latter statute was another "enforcement tool in [the State's] arsenal against the spread of controlled dangerous substances," Order and Opinion of the Court at 7, a " 'part of [the State's] "full court press" against the illicit drug traffic.' " *Id.* (quoting *Ewachiw v. Director of Finance of Baltimore City,* 70 Md.App. 58, 60, 519 A.2d 1327, 1328 (1987). The constitutional issue this appeal presents was not expressly addressed.

_____

The section 297(*l*)(1) presumption relates to the forfeitability of the property as proceeds; it does not address the property's ownership. In other words, the section 297(*l*)(1) presumption has no relevance to establishing ownership of the property. Who owns the property is an issue the resolution of which is dependent upon the adequacy of the evidence that each party adduces on that issue.
*Id.* at 279, 638 A.2d at 1171.

The appellant appealed to the Court of Special Appeals. We granted certiorari on our own motion prior to that court considering it.

## II.

The appellant challenges the forfeiture in this case as an excessive fine under both the Eighth Amendment of the United States Constitution and Article 25 of the Maryland Declaration of Rights. For the former proposition, he relies on *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which the United States Supreme Court held that the Excessive Fines Clause of the Eighth Amendment applies to *in rem* civil forfeitures ordered pursuant to a punitive federal forfeiture statute. Because he maintains that it is binding on the several states, through the Fourteenth Amendment, necessarily, civil forfeitures imposed pursuant to punitive state forfeiture statutes, such as § 297, are also subject to that clause's limitations. Moreover, he asserts, Article 25 of the Maryland Declaration of Rights, is in *para materia* with the Eighth Amendment and, thus, must be interpreted co-extensively with it. As such, the appellant contends that, even if this Court were to determine that the Excessive Fines Clause of the Eighth Amendment is inapplicable, the Excessive Fines clause in Article 25 is applicable.

### A.

At issue in *Austin* was "whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures of property under 21 USC §§ 881(a)(4) and (a)(7)." —— U.S. at ——, 113 S.Ct. at 2803, 125 L.Ed.2d at 494. To resolve that issue, the Court perceived the question to be "not, as the United States would have it, whether forfeiture under §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." *Id.* at ——, 113 S.Ct. at 2806, 125 L.Ed.2d at 497. This formulation of the issue was compelled by the purpose of the Eighth Amendment in general and the Excessive Fines Clause in particular. Relying on *Browning–Ferris*

*Industries v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), the Court observed:

> The purpose of the Eighth Amendment, putting the Bail Clause to one side, was to limit the government's power to punish.... The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment. The Excessive Fines Clause limits the Government's power to extract payments, whether in cash or in kind, *"as punishment* for some offense." (Citation omitted)

—— U.S. at ——, 113 S.Ct. at 2805, 125 L.Ed.2d at 497 (quoting *Browning–Ferris,* 492 U.S. at 265, 109 S.Ct. at 2915, 106 L.Ed.2d at 232).

The Court held that §§ 881(a)(4) and (a)(7) are punitive. It was led to that conclusion by four factors: (1) "forfeiture generally and statutory *in rem* forfeitures in particular, historically have been understood, at least in part, as punishment," —— U.S. at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503; (2) both § 881(a)(4) and § 881(a)(7) contain an "innocent owner" defense or exemption, which, because it "reveals a ... congressional intent to punish only those involved in drug trafficking," *id.* at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 504, "serve[s] to focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less," *id.* at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503; (3) Congress chose to tie forfeiture under §§ 881(a)(4) and (a)(7) directly to the commission of drug offenses, by permitting forfeiture of a vehicle or real property on the basis of its use or intended use to facilitate either the transportation of drugs or the commission of a drug related crime punishable by more than one year's imprisonment, *id.* at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 504; and (4) the forfeiture statute's legislative history, which reveals Congress' admission "that the traditional criminal sanctions of fine and imprisonment are inadequate to deter or punish the enormously profitable trade in dangerous drugs" and its belief that real property forfeiture is "a powerful deterrent," raises the inference that those sections are punitive. *Id.*

The *Austin* court rejected the government's argument that the subject forfeiture provisions were remedial in two respects. While acknowledging that the forfeiture of contraband is remedial because it removes dangerous or illegal items from society, —— U.S. at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 504–05, citing *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 364, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361, 369–70 (1984), the Court refused to characterize a mobile home and auto body shop, the property seized in that case, as "instruments" of the drug trade. *Id.* It noted, in that regard, that "there is nothing even remotely criminal in possessing, [them]," *id.* —— U.S. at ——, 113 S.Ct. at 2811, 125 L.Ed.2d at 505 (quoting *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 699, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170, 174 (1965)).

The Court similarly was unimpressed by the government's argument that the forfeited items compensated the government for its expenditures for law enforcement activity and "on societal problems such as urban blight, drug addition, and other health concerns resulting from the drug trade." *Id.* As to that, the Court was of the view that, given "the dramatic variations in the value of conveyances and real property forfeitable under §§ 881(a)(4) and (a)(7)," *id.,* "the 'forfeiture of property . . . [is] a penalty that has absolutely no correlation to any damages sustained by society or to the cost of enforcing the law.'" *Id.* —— U.S. at ——, 113 S.Ct. at 2812, 125 L.Ed.2d at 505 (quoting *United States v. Ward,* 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742, 753 (1980).

Section 297 is, like § 881, a civil *in rem* forfeiture statute, *see 1986 Mercedes Benz 560 CE v. State,* 334 Md. 264, 273, 638 A.2d 1164, 1168 (1994), of the type that "historically [has] been understood, at least in part, as punishment." *See Austin,* —— U.S. at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503. Moreover, the applicable provisions are similar to the provisions construed in *Austin.*

Section 297(b)(9) subjects to forfeiture "[i]n the manner provided under subsection (1) and (m) of this section, all real

property." Section 297(c) defines property not subject to forfeiture. It provides:

> Property or an interest in property described under subsections (b)(4), (9) and (10) of this section may not be forfeited if the owner establishes by a preponderance of the evidence that the violation of this subheading was done without the owner's actual knowledge.

In *1986 Mercedes Benz, 560 CE, supra,* construing subsection (*l* ), the provisions of which we characterized as clear and unambiguous, we said:

> It is rebuttably presumed that property which a person owns or in which he or she has an ownership interest constitutes proceeds and, hence, is subject to forfeiture, whenever the State, by clear and convincing evidence proves that: (1) the person has committed one or more of several enumerated controlled dangerous substances offenses; (2) the person acquired the property during the period in which, or within a reasonable time after, the violation or violations occurred; and (3) the violation was the only likely source of the property.

*Id.* at 278–79, 638 A.2d at 1171. Subsection (m) references certain drug activity, engagement in which subjects property used therewith to forfeiture. Among the drug activity proscribed is possession of a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to distribute a controlled dangerous substance. *See* § 286(a)(1).

The applicable forfeiture provision in this case is § 297(m). Because § 297(c) references subsection (b)(9), which in turn refers to subsection (m), the exemptions contained in subsection (c), are also applicable to subsection (m). Thus, § 297(m), like §§ 881(a)(4) and (a)(7) of the federal statute, contains an innocent owner exemption. That, in addition to knowledge, the federal statute refers to the consent or willful blindness of the owner does not require or suggest a different result. *See United States v. One Parcel of Real Estate at 6640 Southwest 48th Street,* 831 F.Supp. 1578, 1585 (S.D.Fla.1993); *United*

*States v. 2901 Southwest 118th Court,* 683 F.Supp. 783, 788 (S.D.Fla.1988).

Furthermore, forfeiture in the case of subsection (m) is tied, as in the federal statute, to various drug offenses, including, as applicable herein, the possession with intent to distribute a controlled dangerous substance. Finally, the legislative history of § 297 in general, *State v. One 1984 Toyota Truck,* 311 Md. 171, 177, 533 A.2d 659, 661–62 (1987); *Pr. George's Co. v. One 1969 Opel,* 267 Md. 491, 495, 298 A.2d 168, 170 (1973) and subsection (m),[9] in particular, Floor Report on Senate Bill 419 at 1, reveals a purpose, like that of the federal forfeiture statute, to "deter crime by creating civil procedures governing the forfeiture of property and proceeds derived from enumerated CDS offenses, or used to commit or facilitate these crimes." That history also indicates that the Legislature, like Congress, intended forfeiture to be "a powerful prosecutorial tool for stopping CDS offenders and depriving them of the huge profits reaped from their illegal activities." Floor Report at 4. Therefore, the construction of the federal statute is persuasive as to the meaning of the Maryland statute. *See Allen v. State,* 91 Md.App. 775, 783, 605 A.2d 994, 998, *cert. denied,* 328 Md. 92, 612 A.2d 1315 (1992). It is also relevant that the State and the trial court held that the purpose of the Maryland forfeiture statute is, at least in part, punitive.

Accordingly, it follows that § 297, and in particular subsection (m) is, like §§ 881(a)(4) and (a)(7), a punitive statute, the purpose of which is to require "direct payment to a sovereign as punishment for some offense." *Browning–Ferris,* 492 U.S. at 265, 109 S.Ct. at 2915, 106 L.Ed.2d at 232.

## B.

The appellant argues that the Excessive Fines Clause of the Eighth Amendment is applicable to the forfei-

---

**9.** Subsection (m) was added to § 297 by Ch. 586, Laws 1989. The federal statute was amended to cover real property 5 years earlier, in 1984. *See* Act of Oct. 12, 1984, Pub.L. No. 98–473, 1984 (codified as 21 U.S.C. § 881(a)(7)).

ture *sub judice.* We do not reach that issue, however, because we hold that the excessive fines provision of Article 25 of the Maryland Declaration of Rights applies.[10] Article 25 is, textually and historically, substantially identical to the Eighth Amendment. Indeed, both of them were taken virtually verbatim from the English Bill of Rights of 1689. *Walker v. State*, 53 Md.App. 171, 183, 452 A.2d 1234, 1240 (1982), citing *Phipps v. State*, 39 Md.App. 206, 211, 385 A.2d 90, 93–4 (1978). Thus, it is well settled in this State that Article 25 of the Maryland Declaration of Rights is *in para materia* with the Eighth Amendment. *See Minor v. State*, 313 Md. 573, 589 n. 4, 546 A.2d 1028, 1035 n. 4 (1988) (Eldridge, J. concurring).

---

**10.** We note, as did the appellant in argument, that although the Supreme Court has never decided whether the excessive fines provision of the Eighth Amendment is applicable to the several states, at least one Justice of the Supreme Court sees no reasonable basis for treating it differently than the Cruel and Unusual Punishment Clause or the Excessive Bail Clause. *See Browning–Ferris Industries v. Kelco Disposal Inc.*, 492 U.S. 257, 284, 109 S.Ct. 2909, 2925, 106 L.Ed.2d 219, 244 (O'Connor, J. concurring in part and dissenting in part) ("since *Robinson [v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962)] the Cruel and Unusual Punishment Clause has been regularly applied to the States [and] the Court has assumed that the Excessive Bail Clause ... applies to the States. I see no reason to distinguish one Clause of the Eighth Amendment from another for purposes of incorporation, and would hold that the Excessive Fines Clause also applies to the States."). Indeed, this Court, in *Randall Book Corp. v. State of Maryland,* 316 Md. 315, 332, 558 A.2d 715, 724 (1989) seemed to apply the Excessive Fines Clause to its review of a defendant's claim that a fine imposed for a pornography conviction was grossly disproportionate to the underlying criminal activity. It ultimately concluded that "the cumulative punishments did not mount up to an excessive fine or to cruel or unusual punishment within the meaning of the Eighth Amendment." *Id.* Moreover, the Attorney General in an *amicus curia* brief filed in the *Austin* case expressed belief that "[t]here is little doubt that the Eighth Amendment prohibition against ... excessive fines ... would apply to the states." Finally, a number of States, *albeit* without analysis, have applied the Excessive Fines Clause of the Eighth Amendment in resolving challenges to forfeitures under state forfeiture statutes. *See e.g., Pickard v. City of Vero Beach,* 629 So.2d 957, 959 (Fla.Dist.Ct.App. 1993); *Idaho Dept. of Law Enf. v. Real Property located in Minidoka County,* 885 P.2d 381, 383 (Idaho 1994); *People Ex Rel. Waller v. 1992 Oldsmobile Station Wagon,* 265 Ill.App.3d 93, 202 Ill.Dec. 727, 729, 638 N.E.2d 373, 375 (1994); *City of Akron v. Turner,* 91 Ohio App.3d 595, 632 N.E.2d 1374, 1376 (1993); *S.A.S., Inc. v. Commonwealth,* 162 Pa.Cmwlth. 263, 638 A.2d 455, 460 (1994).

Indeed, the excessive fines provision of Article 25 was one of eight such provisions which served as a model for the Excessive Fines Clause of the Eighth Amendment. *See Browning–Ferris*, 492 U.S. at 264 n. 5, 109 S.Ct. at 2915 n. 5, 106 L.Ed.2d at 231 n. 5. Thus, the excessive fines provision of Article 25 should be interpreted co-extensively with the excessive fines provision of the Eighth Amendment.

## III.

■ The *Austin* court declined Austin's invitation "to establish a multi-factor test for determining whether a forfeiture is constitutionally 'excessive.' " —— U.S. at ——, 113 S.Ct. at 2813, 125 L.Ed.2d at 505. It explained:

> Although the Court of Appeals opined "that the government is exacting too high a penalty in relation to the offense committed, . . . it had no occasion to consider what factors should inform such a decision because it thought it was foreclosed from engaging in the inquiry. Prudence dictates that we allow the lower courts to consider that question in the first instance."

*Id.* (citations omitted). The Court pointed out, however, that it did not "rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits the Court of Appeals from considering other factors in determining whether the forfeiture of Austin's property was excessive." *Id.* at —— n. 15, 113 S.Ct. at 2812 n. 15, 125 L.Ed.2d at 505 n. 15.

The latter comment was in response to Justice Scalia's concurring opinion proffering an instrumentality test as the proper standard by which the excessiveness of fines must be judged under the Eighth Amendment. Agreeing that the forfeiture in that case "works as a fine" and, thus, raises the excessiveness issue, Justice Scalia stated his belief that "the excessiveness analysis must be different from that applicable to monetary fines and, perhaps, to *in personam* forfeitures," in which "the touchstone is the value cf the fine in relation to the offense." *Id.* at ——, 113 S.Ct. at 2814–15, 125 L.Ed.2d at

508. Commenting on the relevance of the offense of which the defendant is convicted to the property sought to be forfeited, Justice Scalia argues:

> But an *in rem* forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense—the building, for example, in which an isolated drug sale happens to occur. Such a confiscation would be an excessive fine. The question is not how much the confiscated property is worth but whether the confiscated property has a close enough relationship to the offense.

—— U.S. at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509. According to Justice Scalia, therefore, the relevant inquiry involves asking whether the relationship of the property to the offense is "close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" *Id.*

Since the *Austin* decision, a number of courts have been faced with the task of formulating a test by which to assess whether an *in rem* forfeiture is excessive under the Excessive Fines Clause of the Eighth Amendment or a comparable State provision. The results have not been uniform. Some courts have adopted the instrumentality test espoused by Justice Scalia. *See United States v. Chandler*, 36 F.3d 358 (4th Cir.1994); [11] *One Ford Motor Vehicle VIN # 1 FACP41A8LFZ17570 v. State*, 104 Md.App. 744, 657 A.2d 825 (1995); *In Re King Properties*, 535 Pa. 321, 635 A.2d 128 (1993); *SAS, Inc. v. Commonwealth*, 162 Pa.Cmwlth. 263, 638 A.2d 455 (1994). Other courts, indeed the majority, have combined the instrumentality test with some form of a proportionality test. *See e.g. United States v. R.R. No. 1, Box 224,*

---

11. Shortly after the *Austin* decision, the Fourth Circuit, in the context of a remand of a forfeiture case to the district court for further proceedings, indicated, albeit *in dicta*, that in light of *Austin* "an inquiry into the proportionality between the value of the instrumentality sought to be forfeited and the amount needed to effectuate the legitimate remedial purposes of the forfeiture would seem to be in order." *United States v. Borromeo*, 1 F.3d 219, 221 (4th Cir.1993). That inquiry, as *U.S. v. Chandler*, 36 F.3d 358 (4th Cir.1994) attests, is no longer the appropriate one in that circuit.

14 F.3d 864, 875 (3d Cir.1994) (adopting the test of *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)— weighing gravity of offense and harshness of penalty, and sentences imposed in the same and other jurisdictions for same offense, taking account of "the absolute magnitude of the crime" and the "culpability of the offender"); *United States v. Alexander,* 32 F.3d 1231, 1238 (8th Cir.1994) (for purposes of proportionality, consider extent and duration of criminal activities, gravity of offense, value of property forfeited, specific facts involved in case, sentences imposed, and factors identified in *United States v. Sarbello,* 985 F.2d 716, 724 (3rd Cir.1993), *i.e.* personal benefit reaped by defendant, his or her sentence, and extent that defendant and the property are "guilty"); *United States v. 9638 Chicago Heights,* 27 F.3d 327, 330 (8th Cir.1994) (monetary value of property, nature and use of the property, effect of forfeiture on innocent users of property);[12] *United States v. 18755 North Bay Road,* 13 F.3d 1493, 1498 (11th Cir.1994) (opting for proportionality analysis, court determined that it is appropriate to measure seriousness of offense by looking at whether conduct was the sort Congress intended the forfeiture laws to punish); *United States v. 461 Shelby County Road,* 857 F.Supp. 935, 938 (N.D.Ala.1994) (financial condition of defendant, nature and use of property forfeited, culpability of owner); *United States v. One Parcel Property at 427 & 429 Hall St.,* 853 F.Supp. 1389, 1399–1400 (M.D.Ala.1994) (using instrumentality test as threshold—if sufficient nexus—consider whether forfeiture is grossly disproportionate, given the nature of offense involved);[13] *United States v. 6625 Zumirez Drive,* 845 F.Supp. 725, 732 (C.D.Cal. 1994) (combining instrumentality test with gravity of offense and harshness of penalty, and extensiveness of criminal activi-

---

**12.** The court reversed the district court decision in *United States v. 9638 Chicago Heights,* 831 F.Supp. 736 (E.D.Mo.1993), which had applied the *Scalia* instrumentality test as the sole factor informing forfeiture.

**13.** Prior to the decision in *United States v. 18755 North Bay Road,* 13 F.3d 1493 (11th Cir.1994), the district court had adopted the instrumentality test as the sole measure of excessiveness. *United States v. 427 & 429 Hall Street,* 842 F.Supp. 1421 (M.D.Ala.1994).

ty); *United States v. 24214 Lemay Street,* 857 F.Supp. 1373, 1382 (C.D.Cal.1994) (same); *United States v. One 1990 Ford Ranger Truck,* 876 F.Supp. 1283 (N.D.Ga.1995) (applying a modified *427 & 429 Hall Street* analysis—the second prong of which measures not value of the property, but hardship engendered by forfeiture.); *United States v. Rural Route 1,* 1994 WL 194172 (N.D.Ill.1994) (the *Zumirez* test); *United States v. Real Property: 835 Seventh Street Rensselaer,* 820 F.Supp. 688, 689 (N.D.N.Y.1993) (adopting the pre-*Austin* test formulated by the court in *United States v. 38 Whalers Cove Drive,* 954 F.2d 29 (2d Cir.1992)) [14]; *United States v. Shelly's Riverside Heights Lot X,* 851 F.Supp. 633 (M.D.Pa.1994) (applying the tri-part test of *Solem v. Helm, supra; Idaho v. Real Property Located in Minidoka County,* 126 Idaho 422, 425, 885 P.2d 381, 384 (1994) (remanding case for development of test for determining excessiveness, noting the *Austin* court's refusal to limit the lower courts to consideration of the relationship between the forfeited property and the offense); *People v. 1992 Oldsmobile Station Wagon,* 265 Ill.App.3d 93, 202 Ill.Dec. 727, 730–31, 638 N.E.2d 373, 376–77 (1994) (noting the appropriateness of considering whether too high a penalty has been exacted, given the offense committed, and relevance of the defendant's ability to pay on the issue of forfeiture); *Fant v. Texas,* 881 S.W.2d 830, 832–33 (Tex.App.1994) (in deciding whether prior forfeiture of the defendant's property barred subsequent criminal prosecution, the court considered that the penalty of forfeiture was intended to be imposed on those involved in criminal activity). At least one court has decided the case before it by applying both the instrumentality

---

**14.** The test addresses proportionality within the context of a Cruel and Unusual Punishment Clause analysis. It is multi-factored. Under the first factor, the court determines whether the property is substantially used for illegal purposes. If it is, then the total value of the drugs involved in the underlying criminal activity is compared to the total value of the property subject to forfeiture. Forfeiture is presumptively excessive if the value of the latter is disproportionate to the value of the former. That presumption may be rebutted, however, by the government's "cost of investigation and detection, as well as other costs and damages attributable to the criminal misconduct of the claimant." *United States v. 38 Whalers Cove Drive,* 954 F.2d 29, 37 (2nd Cir.1992).

test and a proportionality test, comparing value of property against the nature of the offense. *United States v. 11869 Westshore Drive,* 848 F.Supp. 107, 111 (E.D.Mich.1994).

*Chandler* presents a forceful and well articulated defense of the instrumentality test. The court formulated a three part test for determining the excessiveness of an *in rem* forfeiture under the Eighth Amendment. That test "considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder." 36 F.3d at 365.

Underlying the first factor is the notion "that Congress, in providing for civil forfeiture of property involved in drug offenses for which punishment exceeds one year, . . . did not intend to punish or fine by a particular amount or value; instead, it intended to punish by forfeiting property at whatever value which was *tainted* by the offense. Accordingly, the constitutional limitation on the government's action must be applied to the degree and the extent of the taint, and not to the value of the property or the gravity of the offense." *Id.* at 364. (Citation omitted) Given this primary focus, the court formulated additional factors to be considered "[i]n measuring the strength and extent of the nexus between the property and the offense": (1) the extent to which the use of the property was deliberate and planned or merely incidental and fortuitous; (2) the property's importance to the success of the illegal activity; (3) how long the property was used and the spatial extent of its use; (4) whether the illegal use was isolated or repetitive; and (5) the purpose for acquiring, maintaining or using the property. *Id.* at 365.

The second factor gives recognition to the fact that the forfeiture statute is a punitive statute and that the person punished is the owner of the property. *Id.* at 364. The final factor is a pragmatic one which explores the possibility of separating the tainted property from non-implicated property, when it is readily separable. *Id.*

The test developed by the *Chandler* court does not include a proportionality factor. This is so because the court rejected proportionality as an aspect of the Eighth Amendment's Excessive Fines Clause, reasoning that *Solem v. Helm, supra,* from which the proportionality analysis derives, has been undermined by *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991),[15] *id.* at 365, and that the proportionality principle, if it exists at all, in the Eighth Amendment, derives from the Cruel and Unusual Punishment Clause and not the Excessive Fines Clause. Id. at 365–66.

Although by no means representative of this class of case—as we have seen, there are a variety of multi-factor tests, using a variety of proportionality factors—*6625 Zumirez Drive* is both instructive and persuasive. In that case, the court developed a three-factor test for determining whether a forfeiture violates the Excessive Fines Clause:

> (1) the inherent gravity of the offense compared with the harshness of the penalty; (2) whether the property was an integral part of the commission of the crime; and (3) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.

845 F.Supp. at 732 (footnote omitted). No single factor was deemed to be dispositive. *Id.*

Although the first factor was derived from *Solem, supra,* the court made clear why it is appropriately applied in the excessive fines context, because "[t]he word 'excessive' in the Excessive Fines Clause implicitly prohibits those fines that exceed the crime alleged." *Id. See also 9638 Chicago Heights,* 27 F.3d at 330 (after pointing out the Supreme

---

**15.** In support of this proposition, the *Chandler* court pointed out that, in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), two justices flatly rejected the proportionality principle as a part of the Eighth Amendment, *id.* at 964–66, 111 S.Ct. at 2686, 115 L.Ed.2d at 846, and that three others would limit the scope of *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), by holding that the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime," rather than requiring strict proportionality between the crime and the sentence. *Id.* at 1000, 111 S.Ct. at 2705, 115 L.Ed.2d at 869.

Court's refusal to adopt the instrumentality test, finding it "inadequate because it conflates the Eighth Amendment excessive fine analysis with the section 881(a)(7) nexus requirement."); *United States v. R.R. # 1, Box 224,* 14 F.3d at 873 (noting that majority did not adopt Justice Scalia's proposed test and warning against "conflating the Eight Amendment inquiry with section 881(a)(7)'s nexus requirement"); *One 1990 Ford Ranger,* 876 F.Supp. at 1287 ("a forfeiture can only be 'excessive' if it is compared to something else"). Addressing when this factor is applicable, the court asserted that the conduct for which the forfeiture penalty is imposed may range from conviction for the criminal act underlying the forfeiture to acquittal of those acts and that the focus should be on the claimant's or owner's conduct. 845 F.Supp. at 733. In that regard, it said, an owner who has been acquitted has engaged in behavior less grave than one who has never been charged, which is, in turn, less grave than that of one who has been charged and convicted of the criminal conduct. *Id.* The court explained that not only must the owner's culpability be considered in connection with the gravity prong, but it also must be considered, along with the monetary and intangible value of the property forfeited, in evaluating the harshness of the penalty imposed. *Id.* at 733–34.

The second factor is the instrumentality test. Derived from the Scalia concurring opinion, its focus is on whether the property was an integral part of the commission of the crime. *Id.* at 734. Unlike Justice Scalia, however, included in the analysis is an assessment of the culpability of the property owner and the property; according to the court, that is a necessary aspect of excessive fines analysis. *Id.* at 733–34. Concluding that the *Austin* court majority held that civil forfeiture punishes, at least in part, the claimant for offensive conduct and, thus, at least implicitly, recognized the appropriateness of analyzing whether the fine is excessive in comparison with the claimant's conduct, the court, also focusing on Justice Scalia's statement of the relevant inquiry: "the relationship of the property to the offense," *see Austin,* —— U.S. at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509 (Scalia, J.

concurring), rejects Justice Scalia's apparent disregard of the role of the owner in causing the forfeiture. It points out:

[T]he use of the word "offense" in the phrase "relationship of the property to the offense" implies that an offense or at least offensive conduct has occurred, giving rise to the civil forfeiture. Since the claimant is the person punished for the offense, and since an offense cannot occur without some human participation, it would be illogical not to consider relevant the extent of the claimant's involvement in the offense. By addressing both the claimant's and the property's relationship to the offensive conduct, the Court believes that its multifactor test accurately determines whether the punishment imposed by a civil forfeiture violates the Excessive Fines Clause.

845 F.Supp. at 734 n. 4.

The final factor looks at the extent to which the property was used in the criminal activity. "Under this factor, the Court looks not only at whether the defendant property was an integral part of the criminal activity, but whether the defendant property played an extensive or pervasive role in the commission of the crime." *Id.* at 734.

The requirements of the Excessive Fines Clause of the Eighth Amendment and, hence, of Article 25 of the Maryland Declaration of Rights, mandate that recognition and effect be given to the use of the word "excessive" in that clause and to the *Austin* court's holding that a civil forfeiture is punishment. In order that a forfeiture constitutes punishment, it must necessarily have as its object, in addition to the property itself, some person. Notwithstanding the argument made by Justice Scalia and the cases adopting it, logically that person is the owner of the property. It is appropriate, therefore, that the owner's culpability with respect to the underlying criminal activity be considered. While the relationship of the property to the offense is, as most courts recognize, a relevant and important factor, it is not, as the *Austin* court recognized, the only factor. But that is precisely what the instrumentality test, considered alone, does—"it conflates the Eighth Amend-

ment excessive fines analysis with the § 881(a)(7) nexus requirement." *9638 Chicago Heights,* 27 F.3d at 330. The Excessive Fines Clause requires more.

Accordingly, we conclude that resolution of a claim that a forfeiture of property violates the constitutional prohibition against imposition of excessive fines necessarily requires consideration of not only those factors involved in "instrumentality" test, but also factors of proportionality that compare the gravity of the offense or offenses involving the property and the extent of involvement of the owner with the enormity of the loss to the owner occasioned by the forfeiture. Thus, while the several factors set forth in *U.S. v. Chandler, supra,* 36 F.3d at 365, provide a sound basis for evaluating the relationship between the property and the illegal activity, the enormity of the loss to the owner, the gravity, scope, and duration of the illegal activity, and the degree of the owner's culpability also must be considered.[16] Proportionality, as that term is used here, does not include the necessity to compare forfeiture laws or practices of other jurisdictions—it means simply that there must be a comparison of the extent of the loss to the relevant factors involved, including the gravity and extent of the illegal activity, the nexus between that conduct and the subject property, and the extent of involvement of the owner—all to determine whether the "fine" is out of all reasonable proportion to the relevant factors.

■ It would be premature for us to propose, by this opinion, a precise formula or laundry list of factors to fit every case that will come before the courts. We can at this juncture only paint with a rather broad brush, identifying the required

---

**16.** Proof of the relevant factors in a forfeiture case is not limited to a particular offense charged. Proof of the duration and extent of the course of criminal activity and its nexus to the property may be appropriate, and the State may well wish to show the extent of profit to the owner from this course of conduct because that fact bears on the question of how much the owner actually loses by the forfeiture. Profits from the illegal activity may be shown by direct evidence, or indirectly through a showing of net worth of the owner and the absence of other known or demonstrable sources of income.

areas of consideration and the non-exclusive list of factors we have discussed, leaving to the trial judges in the first instance the weighing of factors appropriate to each individual case.[17]

*JUDGMENT OF THE CIRCUIT COURT FOR SOMER-SET COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY SOMER-SET COUNTY.*

---

**17.** The State argues that the Maryland General Assembly has already considered, and decided, the proportionality issue; hence, there is no occasion for this Court to do so again. It offers as reasons for that conclusion the fact that § 297(m)(1)(ii) limits forfeiture eligibility to property involved in certain "serious" crimes, while the federal statute did not. We reject that argument. Both the Excessive Fines Clause of the Eighth Amendment and the comparable clause in Article 25 address "excessive fines imposed," in the case of Maryland, " 'by the courts of law.' " Consequently, the clause protects, more clearly in the case of Maryland, against fines actually "imposed" by a court, rather than those considered and either adopted or rejected by a legislature. *See Idaho v. Real Property Located in Minidoka County, supra.* In that case, a similar argument was made to the Supreme Court of Idaho, with respect to a provision in the State forfeiture statute, which provided, "the size of the property forfeited shall not be unfairly disproportionate to the size of the property actually used in violation of the provisions of this section." *Id.* at 383. Recognizing that the legislature did address the excessive fines issue in the statute, the court also rejected the argument that the statute was not subject to excessive fines analysis. The court explained:

> The fact that the statute purports to limit the size of property which could be taken does not preclude the possibility that the property actually taken could constitute an excessive fine under the Eighth Amendment. Subsection (e) cannot shield the forfeiture from Eighth Amendment review.

885 P.2d at 383–84.