688 A.2d 466

Shirley Mae THOMPSON, et al.

v.

Gerald GRINDLE, County Treasurer.

No. 487, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Jan. 31, 1997.

478

Frederick P. Charleston, Baltimore, for Appellants.

Fletcher P. Thompson, Cambridge, for Appellee.

Argued before HARRELL, SALMON and THIEME, JJ.

THIEME, Judge.

This appeal is from a civil forfeiture action, in the Circuit Court for Dorchester County, in which a 1984 BMW and $4,094 in U.S. currency were deemed to be forfeited pursuant to Md.Code Ann. (1996 Repl.Vol.), Article 27, section 297,[1] based upon the alleged distribution of CDS by appellant, Thompson.

## *FACTS*

On 18 November 1994, Deputy Russell Phillips of the Dorchester County Sheriff's Department was on routine patrol and saw appellant, Darryl Thompson, driving a 1984 BMW which was registered to Thompson's mother, appellant Shirley Mae Thompson. Knowing that there was an outstanding warrant for Thompson,[2] Phillips stopped the vehicle and placed him under arrest. In a search incident to the arrest,

1. Hereinafter, unless otherwise indicated, all statutory references are to Art. 27.

2. The record fails to reveal the basis for the issuance of this warrant.

Phillips recovered from Thompson's right front pocket a plastic bag containing cocaine and marijuana. From his left front pocket, Phillips recovered $1,250 in U.S. currency. Thompson was transported for processing, and the BMW was driven to the sheriff's office. While presumably conducting an inventory search of the vehicle, Phillips located $2,840 between the front seat and the center console, adjacent to where Thompson had been sitting, and an additional $4 near the ashtray on the console.[3]

On or about 29 December 1994, Gerald Grindle, Treasurer for Dorchester County, filed a complaint in the Circuit Court for Dorchester County, seeking forfeiture of the BMW and currency. It was alleged that all were fruits of distribution of controlled dangerous substances, and that Thompson was the true owner of the car. The same BMW previously had been the subject of a forfeiture complaint which was denied on different facts.

On 5 September 1995, Thompson pled guilty to one count of possession of cocaine, and received a split sentence of three years incarceration, half of which was suspended.[4] A civil trial was held in the Circuit Court for Dorchester County to determine whether the car and the money were to be forfeited. Shirley Thompson filed a motion *in limine* seeking to prevent the county from introducing any evidence that contradicted her ownership of the car based upon the court's previous denial of forfeiture, where her ownership was an underlying issue. The circuit court denied Thompson's motion, indicating that the issue of ownership had not been specifically addressed in the court's prior ruling.

A trial on the merits was held on 24 May and 16 August 1995. At trial, Shirley Thompson, the registered owner of the BMW, testified that she permitted Thompson to drive the

---

3. Nowhere in the record can we locate documentation evidencing that an inventory search was in fact conducted.

4. The State entered a *nolle prosequi* on the charge of possession of marijuana.

BMW because he had no other transportation. Thompson testified that the currency seized from his person and the vehicle were not proceeds of the sale of narcotics, but, rather, earnings from automotive repair and related work. Other witnesses testified on behalf of appellants to corroborate the sources of the funds.

On 1 December 1995 the court issued an oral opinion ordering the forfeiture of both the BMW and the currency seized, based upon Thompson's failure to rebut the presumption that both were derivatives and instrumentalities of the sale of narcotics. The court further determined that although the BMW was titled in the name Shirley Thompson, the appellee had rebutted the presumption of ownership and the true owner of the car was Thompson.

> "Title registration merely raises a presumption of ownership, which, not being conclusive is rebuttable by evidence to the contrary if such is produced."

*Liberty Mut. Ins. Co. v. American Auto. Ins. Co.,* 220 Md. 497, 500, 154 A.2d 826,(1959). This timely appeal followed.

Appellants present six issues for this Court's review:

1. Did the court err in denying appellant Shirley Thompson's motion *in limine* concerning her ownership of the vehicle?
2. Did the court err in denying appellants' motion for judgment at the close of appellee's case?
3. Did the court err in denying appellants' motion for judgment at the close of all evidence?
4. Did the court err in finding that appellant Thompson failed to rebut adequately the presumption that the currency seized was forfeitable?
5. Did the court err in entering judgment for appellee when, as a matter of law, he was not in compliance with the procedures governing forfeitures?
6. Did the court err as a matter of law in ordering the forfeiture of the BMW and the currency seized?

We answer "Yes" and "No" respectively to the two aspects of the final question for the reasons set forth herein, without reaching the merits of the remaining issues.

***Discussion***

Forfeiture, although generally sought as a result of a criminal matter, *Allied Bail Bonds v. State,* 66 Md.App. 754, 505 A.2d 918 (1986), is a civil *in rem* proceeding, *State v. Greer,* 263 Md. 692, 284 A.2d 233 (1971), in which the burden of proof is by preponderance of the evidence rather than proof beyond a reasonable doubt. *Allen v. State,* 91 Md.App. 775, 605 A.2d 994, *cert. denied,* 328 Md. 92, 612 A.2d 1315 (1992); *One Chevrolet Van v. State,* 67 Md.App. 485, 508 A.2d 503 (1986), *aff'd,* 309 Md. 327, 524 A.2d 51 (1987). Considered harsh and odious, forfeitures are disfavored in law and should be avoided when possible. *State ex rel. Frederick City Police Dept. v. One 1988 Toyota Pick-up Truck,* 334 Md. 359, 639 A.2d 641 (1993). In those instances when forfeiture is warranted despite the severity of the proceedings, the governing statutory provisions must be interpreted strictly and applied. *Vieira v. Prince George's County,* 101 Md.App. 220, 645 A.2d 639, *aff'd,* 340 Md. 651, 667 A.2d 898 (1995).

Appellants contend that the trial judge erred in ordering the forfeiture of both the BMW and the currency because, based upon the totality of circumstances of the case, seizure and forfeiture are not justified. They direct this Court's attention to § 297 (1996 Repl.Vol.), which provides in pertinent part:

> (b) *Property subject to forfeiture.* —— The following shall be subject to forfeiture and no property right shall exist in them:
>
> . . . . .
>
> (6) All money, coin, currency, or weapons which have been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All money, coin, currency, or weapons which are found in

close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon a claimant of the property to rebut this presumption.

This money, currency, or weapons shall be deemed to be contraband of law and all rights, title and interest in and to the money, currency, or weapons shall immediately vest in and to. . . . . the county in which it was seized. . . . . and no such money,currency, or weapons shall be returned to any person claiming it, or to any other person, except in the manner hereinafter provided;

. . . . .

(h) *Procedure; notice.* ——

. . . . .

(i) *Motor Vehicles* —— *Standards for seizure.* —— In exercising the authority to seize motor vehicles pursuant to this section the following standards shall be utilized:

(1) A motor vehicle used in violation of this section shall be seized and forfeiture recommended to the forfeiting authority when:

(i) Controlled dangerous substances in any quantity are sold or attempted to be sold in violation of this subtitle;

(ii) Although the violator has not sold or attempted to sell controlled dangerous substances in violation of this subtitle, an amount of such substances or paraphernalia is located which would reasonably indicate that sale is contemplated by the violator; or

(iii) The total circumstances of the case dictate that seizure and forfeiture is justified; these circumstances would include such factors as the following:

1. The possession of controlled dangerous substances;

2. An extensive criminal record of the violator;

3. A previous conviction of the violator for a controlled dangerous substances violation;

4. Corroborated information is developed indicating that the violator is or was recently a seller, or frequently associates with individuals known to be distributors of illegal controlled dangerous substances or paraphernalia;

5. Circumstances of the arrest; or

6. The manner in which the vehicle was being used.

In reviewing the trial court's order of forfeiture, we must apply the facts of the instant case to the statutory factors listed above, and then determine if there exists any conceivable rationale to support the lower court's conclusions that underlie its judgment.

The "excessive fines" analysis under the Eighth Amendment of the United States Constitution and Article 25 of the Maryland Declaration of Rights was raised by appellant in his brief and in both his initial statement and closing argument to the trial court.[5] It was also addressed by the trial judge in his oral opinion. We are therefore satisfied that the issue is properly preserved for this Court's review.

The Court of Appeals in *Aravanis v. Somerset County,* 339 Md. 644, 664 A.2d 888 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996), held that civil *in rem* forfeitures are subject to an excessive fines analysis. *Aravanis,* 339 Md. at 656–57, 664 A.2d 888. Although appellants raised the issue in a cursory fashion, we think it incumbent upon this Court to exercise its plenary discretion under Maryland Rule 8–131(a) in fully addressing the issue.

The Supreme Court, in *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), declined to delineate a multi-factor test to aid in the determination of

---

5. The Eighth Amendment of the United States Constitution is construed *in pari materia* with Article 25 of Maryland's Declaration of Rights, *Phipps v. State,* 39 Md.App. 206, 211, 385 A.2d 90 (1978). The Eighth Amendment, moreover, is now deemed to be incorporated into the due process clause of the Fourteenth Amendment and is, therefore, binding on the states. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

whether a forfeiture is unconstitutionally excessive.[6] The Court suggested that such a determination ought best be initially considered by the lower federal courts.

Similarly, in *Aravanis,* Judge Robert M. Bell (presently Chief Judge) indicated:

> It would be premature for us to propose, by this opinion, a precise formula or laundry list of factors to fit every case that will come before the courts. We can at this juncture only paint with a rather broad brush, identifying the required areas of consideration and the non-exclusive list of factors we have discussed, leaving to the trial judges in the first instance the weighing of factors appropriate to each individual case.

339 Md. at 665–666, 664 A.2d 888.

In *Aravanis,* the Court of Appeals adopted a two-prong test, the first prong commonly called the "instrumentality test" and the second called the "proportionality test." Both prongs must be considered in resolving whether the forfeiture of property constitutes an excessive fine.

Since the *Austin* decision, the Court of Appeals for the Fourth Circuit, in *United States v. Chandler,* 36 F.3d 358 (4th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995), espoused an instrumentality test that the *Aravanis* Court seemingly endorsed as the "instrumentality" component of the split test currently applied in forfeiture actions by Maryland courts.

> *Chandler* presents a forceful and well articulated defense of the instrumentality test. The court formulated a three part test for determining the excessiveness of an *in rem* forfeiture under the Eighth Amendment. That test "considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and

6. The Supreme Court in *Austin v. United States* clearly rested its decision exclusively on the Excessive Fines Clause, neither making reference to the Cruel and Unusual Punishment Clause, nor explaining whether or why different treatment is in order.

culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder." (Citation omitted.)

*Aravanis*, 339 Md. at 661, 664 A.2d 888 (quoting *Chandler*, 36 F.3d at 365).

Returning to, and pursuing, the rationale of appellants' allegation of error on the part of the trial court, an analysis of the statutory factors that dictate forfeiture under § 297 must be applied to the instant case.

In our attempted resolution of appellants' allegation that the trial judge's order of forfeiture was not warranted in light of the statutory factors presented above, we give great deference to the factual determinations made by the trier of fact within the course of a forfeiture proceeding, and will not disturb those findings on appeal unless they are clearly erroneous. *One Ford Motor Vehicle v. State*, 104 Md.App. 744, 657 A.2d 825 (1995). Because of the factual uniqueness of each case, the trial judge is vested with the discretion to apply the appropriate criteria underlying the court's decision of whether to grant a complaint for forfeiture on a case-by-case basis. *Aravanis*, 339 Md. at 666, 664 A.2d 888. In considering the applicable standard of review, we are not persuaded that any error in factual findings of the trial court rises to the level of being clearly erroneous. If such findings are upheld as to their validity and conclusiveness, based upon the governing statutory provisions, the forfeiture ordered by the court may nonetheless be subject to further analysis as an excessive fine under *Aravanis*.

## I. The Instrumentality Prong

*<The Nexus>*

In *Austin*, Justice Scalia wrote separately to express the view that proportionality between the offense and the size of the punishment is relevant to an Eighth Amendment excessiveness analysis with respect to monetary fines and *in personam* forfeitures. According to Justice Scalia, the analysis of *in rem* forfeitures should be treated differently because, "un-

like monetary fines, statutory *in rem* forfeitures have traditionally been fixed, not by determining the appropriate value of the penalty in relation to the committed offense, but by determining what property has been 'tainted' by unlawful use, to which the value of the property is irrelevant." *Austin,* 509 U.S. at 627, 113 S.Ct. at 2815. It necessarily follows, therefore, that the excessiveness inquiry as to *in rem* forfeitures, in Justice Scalia's view, should focus solely on the nature of the relationship between the property and the offense: "The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense." (Emphasis in original.) *Id.,* 509 U.S. at 628, 113 S.Ct. at 2815.

Armed with the understanding that forfeiture is based upon the legal fiction that an inanimate object can be guilty of a crime,[7] *Prince George's County v. Blue Bird Cab Co.,* 263 Md. 655, 284 A.2d 203 (1971), we follow Justice Scalia's suggestion that, under the proposed instrumentality test, the proper inquiry as to the relationship between the item that is the subject of the forfeiture action and the offense is whether they are "close enough to render the property, under traditional standards, 'guilty' and hence 'forfeitable.'" *Austin,* 509 U.S. at 628, 113 S.Ct. at 2815. Consequently, we believe the nexus prerequisite of the drug forfeiture laws to be of a constitutional nature.

From the record before us, there is no evidence that Thompson employed the vehicle to distribute or attempt to distribute any controlled dangerous substances. The trial judge failed to note for the record any culpability on the part of the vehicle with respect to the small amount of narcotics that Thompson possessed. The trial court stated:

> [Thompson] had been observed driving the car in excess of 25–30 times for over a period of several months and although the duration of his criminal conduct was not specifi-

7. The rule was first enunciated in *United States v. Brig Malek Adhel,* 43 U.S. (2 How.) 210, 11 L.Ed. 239 (1844).

cally addressed at the forfeiture hearing, he had been under police surveillance since about September 1992 and had previously been found guilty of violating controlled dangerous substances laws of this state.

It is the finding of this court that the property ceased [sic] namely the car and currency were extricably [sic] related to the defendants [sic] criminal activity.

Under § 297(i)(1)(ii), if the amount and the location from which the cocaine was recovered reasonably indicate that Thompson was attempting to engage in the sale of narcotics, the vehicle would be forfeitable. Thompson had allegedly been the subject of covert police surveillance on 25–30 occasions. While testimony revealed that Thompson had been seen driving the BMW on each of those occasions, it failed to articulate Thompson's activities during the aggregate course of the 25–30 surveillances, and how, if at all, those 25–30 surveillances indicate that the vehicle is, or was, involved in the distribution of controlled dangerous substances. The Treasurer failed to present any evidence to demonstrate that Thompson used the BMW to transport drugs for distribution purposes, that the BMW had been seen in a high drug traffic area, or that, during the many occasions on which surveillance had been in place, the BMW even once traveled to a high drug traffic area. The mere fact that Thompson was the subject of surveillance produces nothing more than unsubstantiated speculation as to its alleged criminal involvement.

The existence of a previous misdemeanor conviction related to controlled dangerous substances is not "extricably related" to the BMW or the currency, or to the presumption of their forfeitability.

The evidence failed to indicate persuasively any nexus, other than an incidental or fortuitous one, between the vehicle, the currency, and the cocaine. The vehicle did not play an extensive or pervasive role in the possession of either the cocaine, marijuana or the currency; neither was it important to the success of any past or present illegal activity.

<*The Role and Culpability of Thompson*>

The degree of the culpability of the property owner must also be evaluated.

> Proof of the relevant factors in a forfeiture case is not limited to a particular offense charged. Proof of the duration and extent of the course of criminal activity and its nexus to the property may be appropriate, and the State may well wish to show the extent of profit to the owner from this course of conduct because that fact bears on the question of how much the owner actually loses by the forfeiture. Profits from the illegal activity may be shown by direct evidence, or indirectly through a showing of net worth of the owner and the absence of other known or demonstrable sources of income.

*Aravanis,* 339 Md. at 665 n. 16, 664 A.2d 888.

Although Thompson had been convicted previously of a misdemeanor drug related offense, from the record before us we can glean no evidence that he had "an extensive criminal record," a factor which should be afforded considerable weight in a forfeiture proceeding.

In the present case, Thompson was convicted of the possession of a "small piece of cocaine," [8] not possession with an intent to distribute. It is apparent that at the time of his arrest Thompson was not involved in either the distribution or the attempted distribution of narcotics.

At trial, officers alleged that Thompson was involved in the distribution of controlled dangerous substances; however, neither factual predicate nor adequate corroboration for this assumption was presented. There is no evidence of extensive illegal conduct on Thompson's part or a continuous course of

---

8. The record before this Court lacks the chemist's report or other evidence of the quantity of crack cocaine that Darryl possessed. Without precise information to the contrary, the term "small," albeit vague and imprecise, leads us to the belief that the cocaine rock was of a size more suitable for personal use than for purposes of distribution. Immediately after being arrested, Darryl stated to the arresting officers that he had just smoked some crack.

such activity. As a result of the 25–30 surveillance occasions, there is no evidence that Thompson frequently visited an area known to be one in which high drug trafficking occurred, or that he associated with individuals known to be distributors or users of illegal controlled dangerous substances.

There were no baggies, beepers, scales, other paraphernalia, or a market-worthy quantity of cocaine, exhibiting a propensity toward distribution, recovered from Thompson's person or the BMW. An intent to distribute may be inferred from evidence of possession in sufficient quantity and circumstances to raise such an inference. *Ricks v. State,* 70 Md.App. 287, 520 A.2d 1136, *aff'd,* 312 Md. 11, 537 A.2d 612, *cert. denied,* 488 U.S. 832, 109 S.Ct. 90, 102 L.Ed.2d 66 (1988). The converse also holds true.

Deputy Phillips arrested Thompson because he knew that an outstanding warrant existed for his arrest, not because of Phillips's observance of Thompson engaging in any type of overt criminal activity involving controlled dangerous substances. The recovery of cocaine and marijuana from Thompson's person occurred as a result of the employment of standard police procedures that are undertaken uniformly in all situations in which a subject is taken into custody. With respect to the evaluation of the "total circumstances" required by § 297(i)(1)(iii), Thompson was found guilty only of being in possession of narcotics, and of nothing else. That conviction was an inadequate basis for forfeiture proceedings.

*<Separating Offending Property>*

The Treasurer requested the forfeiture of both the BMW and the recovered currency. A separate analysis is warranted under the facts of this case. The forfeiture of the BMW must be evaluated under Md.Code (1996 Repl.Vol.) § 297(i), while the forfeiture of the currency must be evaluated under § 297(b)(6).

The Court of Appeals in *Director of Finance of Prince George's County, et al. v. Cole, et al.,* 296 Md. 607, 465 A.2d 450 (1983), dealt with the presumption and the subsequent

forfeiture of currency seized under subsection 264(a) which is similar to subsection 297(b)(6). After exploring at length the history and general characteristics of forfeiture proceedings and the history and specific provisions of § 264,[9] the Court stated:

> "Seizure of money pursuant to gambling violations, by legislative determination, transforms that money into *prima facie* contraband. Article 27, § 264(a). Until evidence is presented to rebut this statutory inference, it is illegal for anyone other than the seizing authority to possess the money. Section 264(a) vests all rights, title, and interest in the money at the moment of seizure in the seizing jurisdiction."

And this Court stated in *State v. One Hundred and Fifty-Eight Gaming Devices and a Sum of Nine Thousand Eight Hundred and Nine Dollars,* 59 Md.App. 44, 474 A.2d 545 (1984):

> "Property which becomes the subject of forfeiture is characterized as either contraband *per se* or derivative contraband. Contraband *per se,* that is, property that is inherently illegal, requires no forfeiture procedure in order to perfect the State's interest in it. Derivative contraband, on the other hand is property that may be legal or illegal to possess depending upon the particular circumstances. A

---

**9.** § 264(a):

Whenever any money, currency, or cash is seized or captured by any police officer in this State in connection with any arrest for the playing or operation of any bookmaking, betting and wagering on horses or athletic events, or any lottery, game, table, or gaming device unlawful under the provisions of this article, all such money, currency, or cash shall be deemed prima facie to be contraband of law as a gambling device or as a part of a gambling operation. All rights, title, and interest in and to such money, currency, or cash seized by the police of the local government, including a local sheriff's department which is the local law enforcement agency, shall immediately vest in and to the local governments of the county, municipality, or Baltimore City, or if seized by State authorities, to the State, and no such money, currency, or cash shall be returned to any person claiming the same, or to any other person, except as provided in this section. The Baltimore City police department is not a State authority for the purposes of this section.

determination that property is contraband, under the derivative theory, is made by application of the statute, if there be one, or by common law standards applied to the facts."

The forfeiture of a controlled dangerous substance, which is forfeitable by its inherently illegal nature, does not implicate the excessive fines clause, and unlike derivative contraband, therefore, requires no proceeding for forfeiture, *Director of Finance of Prince George's County, et al. v. Cole, et al.*, 296 Md. 607, 619, 465 A.2d 450 (1983). The possession of $4,094, a significant sum, is not, in and of itself, an inherently illegal product to which Thompson has no legal right of possession.[10] The currency seized from Thompson may or may not have a lawful purpose. None of the evidence presented at trial demonstrated that the currency recovered was a derivative or profit of the cocaine recovered from Thompson at the time of his arrest. That being the situation, the currency may not be characterized as inherently illegal or contraband *per se* and thus it is not automatically forfeitable. Whether the currency is derivative contraband requires judicial determination. If the currency is found to be derivative contraband, it is then subject to forfeiture.

The State has the initial burden of showing that this money was "found in close proximity to contraband controlled dangerous substances." Once the State has met its burden, the $4,094 is presumed to be derivative contraband forfeitable under § 297(b)(6). The onus then shifts to Thompson to rebut the presumption of forfeitability.

Thompson testified that the currency seized was not from any CDS transactions, but was from (1) earnings from automotive repair work; and (2) proceeds from the resale of damaged automobiles; and (3) proceeds from the sale of automotive parts.

Several witnesses were called by Thompson. Each testified to the purchase of various automobiles from him. These cash sales, which totaled approximately $7,000, were said to have

---

**10.** Abandonment of currency for plastic is still on the horizon.

occurred within the two-month period before his arrest on November 18, 1994. There was no testimony the currency actually seized was from any of these sales. At the time of his arrest, Thompson told the arresting officer the money belonged to a friend whose name he did not know. In its review of all the testimony, the trial court found that Thompson had not rebutted the presumption of forfeitability.

Whether this presumption has in fact been rebutted is a question of fact for the trial judge to decide:

> a) Effect. Unless otherwise provided by statute or by these rules, in all civil actions a presumption imposes on the party against whom it is directed the burden of producing evidence to rebut the presumption. If that party introduces evidence tending to disprove the presumed fact, the presumption will retain the effect of creating a question to be decided by the trier of fact unless the court concludes that such evidence is legally insufficient or is so conclusive that it rebuts the presumption as a matter of law.

Md. Rule 5-301(a). Thus, under § (b)(6) of the statute, it is forfeitable as the conditions prescribed have been met. Thompson had no right to possess contraband.

Once this statutory predicate has been satisfied and the currency is determined to be illegal, it is unnecessary under the excessive fines clause to analyze comparatively the factors surrounding the potential deprivation of ownership of the currency in contrast with the germane aspects of the crime committed. The second tier of constitutional scrutiny, the proportionality prong under *Aravanis,* is not reached and therefore need not be invoked.

Underlying our justice system and the Eighth Amendment is the simple concept to let the "punishment match the crime." [11] Not only should the punishment be proportionate to the offense, but it should be logically connected in some way to the wrong committed. We hold that the forfeiture of the BMW seized from appellant Thompson consti-

---

11. Cicero, de Legibus III, 20.

tuted an unconstitutionally excessive fine in violation of the Eighth Amendment and Article 25 of the Maryland Declaration of Rights. The currency, however, was properly seized as illegal contraband. We shall accordingly reverse in part, affirm in part, and remand to the trial court for the entry of a judgment in accordance with this opinion.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

**COSTS TO BE SPLIT EQUALLY BETWEEN THE PARTIES. 50% ATTRIBUTABLE TO APPELLANTS TO BE DIVIDED EQUALLY BETWEEN DARRYL THOMPSON AND SHIRLEY MAE THOMPSON.**