704 A.2d 455

HOWARD COUNTY, Maryland

v.

ONE 1994 CHEVROLET CORVETTE
VIN NO. 1G1YY22P5R5100931.

No. 463, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 9, 1998.

94

96

F. Todd Taylor, Jr., Senior Asst. County Sol. (Barbara M. Cook, Howard County Sol., on the brief), Ellicott City, for appellant.

Gary S. Bernstein, Baltimore, for appellee.

Argued before DAVIS, SALMON and KENNEY, JJ.

SALMON, Judge.

We must consider in this case the question of whether civil forfeiture to Howard County of a 1994 Chevrolet Corvette belonging to Douglas Tennant (Tennant), due to the involvement of the Corvette in violations of the Maryland drug laws, constitutes an excessive fine in violation of Article 25 of the Maryland Declaration of Rights. The trial court (Leasure, J., presiding) concluded that the forfeiture did violate Tennant's right. We agree with the trial judge and shall affirm.

## I.

## BACKGROUND FACTS

Tennant owned a business in Howard County called Maryland Car Care, Inc. His entire income during all periods here relevant was derived from that corporation. In August 1993,

Tennant purchased the Corvette that is the subject of this case with income from the corporation.

Tennant became addicted to cocaine and heroin in June 1995. Tennant's girlfriend, Kimberly Houck,[1] was employed as the bookkeeper for Maryland Car Care, Inc. Ms. Houck also was addicted to cocaine and heroin. Between June 1995 and January 1996, she purchased at least some of the drugs that she used from Rodney Smith (Smith) and Smith's wife, Yvonne Jackson (Jackson). Between June 28, 1995, and the latter part of January 1996, Ms. Houck wrote numerous checks to either Smith or Jackson. The payor of these checks was Maryland Car Care, Inc. The checks bore the signature of Tennant but, according to Tennant's later testimony, he neither signed the checks nor authorized anyone to sign them on his behalf.[2]

On January 24, 1996, Tennant attended a Board of Directors meeting of a family-owned corporation at which he threatened to commit suicide. The family notified the police to be on the lookout for Tennant, who was driving a purple Corvette. Shortly thereafter, Officer Guy Williams, of the Howard County Police Department, saw Tennant pull into the driveway to his home. Tennant emerged from the Corvette and was confronted by Officer Williams who asked for his license and registration. Tennant stepped back into his Corvette and opened a console to retrieve the registration card. When he did so, Officer Williams noticed a home-made crack pipe inside the console. Tennant was arrested for possession of drug paraphernalia. He was then searched. In his pants

---

1. Ms. Houck is erroneously referred to as "Kimberly Haught" in the trial transcript.

2. The total of the checks payable to either Smith or Jackson from Maryland Car Care's account was over $250,000. Tennant testified at the forfeiture hearing that he knew that some of the checks were signed, without his permission or consent, by Ms. Houck. As to the remainder, he testified that these too were signed without his permission, but he was unsure as to the identity of the person who signed them. He did note that Ms. Houck had access to a signature stamp bearing his (Tennant's) name during the relevant time period.

pocket the police found a baggie and a small box. Police suspected that both items contained cocaine. Later tests confirmed that the small box contained .05 grams of cocaine, but the baggie taken from appellant's pocket contained 2.2 grams of heroin.

Tennant pled not guilty to the criminal charges of possession of drug paraphernalia and possession of controlled dangerous substances.[3] He was found guilty of both charges in the District Court for Howard County. The findings of guilt were stricken, however, and he was given a disposition of probation before judgment pursuant to Article 27, section 641A, of the Maryland Annotated Code (1957, 1992 Repl.Vol.).[4] Tennant was placed on three years active probation.

Approximately six weeks after his arrest on the drug charges, Howard County filed a "Complaint to Acquire a Motor Vehicle." In the Complaint, the County alleged, *inter alia*, that Tennant's 1994 Corvette was subject to forfeiture to the County pursuant to Article 27, section 297(b)(4),[5] because the vehicle "was used or intended to be used to facilitate the transportation of cocaine, a Schedule II controlled dangerous substance, and controlled paraphernalia, in violation of law." [6]

A trial in the forfeiture case was held in the Circuit Court for Howard County on October 21, 1996. At the trial, very few facts were in dispute. Tennant admitted that on the day of his arrest he did possess both heroin and cocaine together with a crack pipe. Tennant, who was called by the County as

---

**3.** The record does not show whether the controlled dangerous substance he was charged with possessing was cocaine or heroin or both.

**4.** All references to statutes in this opinion are to Article 27, Maryland Annotated Code.

**5.** The County also alleged that the Corvette had been purchased with proceeds from the sale of drugs. The County abandoned this theory at the end of the forfeiture hearing.

**6.** Due to the fact that Howard County had not received the test results from the drug lab as of March 5, 1996, the County did not allege in its forfeiture Complaint that the Corvette was used to facilitate the transportation of heroin. Drug tests were not performed until May 29, 1996.

an adverse witness, testified that he could not remember if he had used drugs on the day of his arrest. He admitted, however, that he probably had consumed drugs that day because, as of that date, he had a severe drug addiction. He was unable to say for sure if other persons had used drugs while in the 1994 Corvette, but he conceded that Ms. Houck could have done so, possibly "two, three, [or] four [times]." Tennant testified that he could not think of anyone other than Ms. Houck who may have used drugs in his Corvette.

During the course of his testimony, Tennant invoked his Fifth Amendment privilege against self-incrimination and declined to answer questions regarding the identity of his drug supplier(s), whether Ms. Houck ever procured drugs for him, whether Smith ever procured drugs for him, or whether he used the crack pipe found in his car on the day of his arrest.

The parties agreed at trial that the Corvette had a value of approximately $20,000. It was also agreed that Tennant owned a 1988 Ford pick-up truck and a Datsun 300Z in addition to the Corvette.

Tennant argues that the forfeiture of his Corvette, under the circumstances of this case, would violate the excessive fines prohibition set forth in Article 25 of the Maryland Declaration of Rights. Article 25 reads:

Excessive bail, fines and punishment.

That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law.

The trial judge, relying on the test set forth in *Aravanis v. Somerset County*, 339 Md. 644, 665, 664 A.2d 888 (1995), *cert. denied*, 516 U.S. 1115, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996), ruled that the excessive fines provision in Article 25 prevented her from awarding Howard County title to Tennant's vehicle.

## II.

### STANDARD OF REVIEW

Both this Court and the Court of Special Appeals, when reviewing a case tried without a jury, must "review

the case on both the law and the evidence." Maryland Rule 8–131(c) (1995 Repl.Vol.). The Court must "not set aside the judgment of the trial court on the evidence unless clearly erroneous," and must "give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* In addition, we must consider the evidence in the light most favorable to the prevailing party and decide not whether the trial judge's conclusions of fact were correct, but only whether they were supported by a preponderance of the evidence.

*Urban Site Venture II Ltd. Partnership v. Levering Assocs. Ltd. Partnership,* 340 Md. 223, 229–30, 665 A.2d 1062 (1995) (some citations omitted).

## III.

## ANALYSIS

There are four basic legal propositions that must be kept in mind whenever a forfeiture action is before the Court. First, a forfeiture action is a civil *in rem* proceeding subject to an "excessive fines" analysis. *Aravanis,* 339 Md. at 651, 664 A.2d 888. Second, forfeitures are not favored in the law and should be avoided whenever possible. *State ex rel. Frederick City Police Dept. v. One Toyota Pick–Up Truck,* 334 Md. 359, 375, 639 A.2d 641 (1994). Third, the burden of proof necessary to sustain a forfeiture is that of a preponderance of the evidence. *Prince George's County v. Blue Bird Cab Co.,* 263 Md. 655, 659, 284 A.2d 203 (1971). Fourth, Article 25 of the Declaration of Rights is, "textually and historically, substantially identical to the Eighth Amendment" to the United States Constitution and thus "should be interpreted coextensively with the excessive fines provision of the Eighth Amendment." *Aravanis,* 339 Md. at 656–57, 664 A.2d 888.

In *Aravanis,* the petitioner, George Aravanis, owned a farm in Somerset County, Maryland. *Id.* at 646, 664 A.2d 888. He used the farm as part of a marijuana distribution enterprise. *Id.* The police received word of Mr. Aravanis's illicit activities, searched the farm, and found approximately two pounds

of marijuana within a gas barbeque grill located outside his house. They also found marijuana plants growing near the house and drug paraphernalia in Mr. Aravanis's possession. *Id.* at 647, 664 A.2d 888. Aravanis pled guilty to one count of possession of a controlled dangerous substance in sufficient quantity to indicate an attempt to manufacture, distribute, or dispense (the marijuana) as prohibited by Article 27, section 286. *Id.* In *Aravanis,* Somerset County sought forfeiture of Mr. Aravanis's real property due to Aravanis's violation of Maryland's drug laws. The trial judge concluded that Aravanis's farm was used in connection with the distributing of marijuana and that, because no statutory exceptions applied, the court had no discretion to do anything except order forfeiture of the farm. Aravanis challenged the forfeiture as an excessive fine under both the Eighth Amendment of the United States Constitution and Article 25 of the Maryland Declaration of Rights.

█ The *Aravanis* Court reversed the trial court and held that, upon remand, the court should analyze whether Article 25 barred the forfeiture. *Aravanis,* 339 Md. at 657, 664 A.2d 888. The trial court was directed to apply two separate tests to determine whether forfeiture of Aravanis's property constituted an "excessive fine" within the meaning of Article 25. The first is commonly called the "instrumentality test." *Id.* at 657–58, 664 A.2d 888. The instrumentality test, among other things, inquires as to whether "the relationship of the property to the offense . . . [is] close enough to render the property, under traditional standards, 'guilty' and hence forfeitable." *Austin v. United States,* 509 U.S. 602, 628, 113 S.Ct. 2801, 2815, 125 L.Ed.2d 488 (1993) (Scalia, J., concurring). The second is the "proportionality" test, which compares the enormity of the loss to the owner with the gravity, scope, and duration of the illegal activity, and the degree of the owner's culpability. *Aravanis,* 339 Md. at 665, 664 A.2d 888.

### A. The Instrumentality Test

█ Chief Judge Robert Bell, writing for the Court in *Aravanis,* recognized that one of the most important cases

articulating the factors to be applied when utilizing the instrumentality test was *United States v. Chandler*, 36 F.3d 358 (4th Cir.1994). Judge Bell said:

> *Chandler* presents a forceful and well articulated defense of the instrumentality test. The court formulated a three part test for determining the excessiveness of an *in rem* forfeiture under the Eighth Amendment. That test "considers (1) the nexus between the offense and the property and the extent of the property's role in the offense, (2) the role and culpability of the owner, and (3) the possibility of separating offending property that can readily be separated from the remainder." 36 F.3d at 365.

*Aravanis*, 339 Md. at 661, 664 A.2d 888.

The *Aravanis* Court later made it clear that on remand the trial court should use the three factors set forth in *Chandler* when applying the instrumentality test to the facts of that case. *Id.* at 665, 664 A.2d 888.

## 1. The Nexus Prong

■■■ A court should first attempt to measure "the strength and extent of the nexus between the property and the offense." *Chandler*, 36 F.3d at 365. In assessing this factor, a court looks at five items, viz:

> (1) the extent to which the use of the property was deliberate and planned or merely incidental and fortuitous; (2) the property's importance to the success of the illegal activity; (3) how long the property was used and the spatial extent of its use; (4) whether the illegal use was isolated or repetitive; and (5) the purpose for acquiring, maintaining or using the property.

*Aravanis*, 339 Md. at 661, 664 A.2d 888 (citing *Chandler*, 36 F.3d at 365).

The trial judge in the case *sub judice* found that the vehicle was being used to transport Tennant home from a Board of Directors' meeting, but that the vehicle was not "deliberately" being used to "transport controlled dangerous substances." In Judge Leasure's words: "The testimony and evidence did

not show ... that the subject vehicle had anything other than a *de minimis* role regarding the offenses of which [d]efendant was convicted." The court noted that the vehicle was acquired by Tennant prior to the date he developed a drug habit and thus, implicitly, the court was of the view that the vehicle was not purchased for purposes connected with the transportation of drugs or drug paraphernalia. The trial judge concluded that the nexus between the Corvette and the offenses charged was so insubstantial that it failed to justify the forfeiture of the vehicle.

## 2. Owner Culpability Prong

As to the second prong of the instrumentality test (the role and culpability of the owners), the trial court's only comment was that the owner admitted his guilt as to the offenses charged in the forfeiture petition. This factor simply "gives recognition to the fact that the forfeiture statute is a punitive statute and that the person punished is the owner of the property." *Aravanis*, 339 Md. at 661, 664 A.2d 888 (citing *Chandler*, 36 F.3d at 364). In regard to the property owner's culpability:

> Proof of the relevant factors in a forfeiture case is not limited to a particular offense charged. Proof of the duration and extent of the course of criminal activity and its nexus to the property may be appropriate, and the State may well wish to show the extent of profit to the owner from this course of conduct because that fact bears on the question of how much the owner actually loses by the forfeiture. Profits from the illegal activity may be shown by direct evidence, or indirectly through a showing of net worth of the owner and the absence of other known or demonstrable sources of income.

*Aravanis*, 339 Md. at 665 n. 16, 664 A.2d 888.

In the case at hand, there was no evidence, direct or circumstantial, from which it could be inferred that Tennant sold drugs or had any connection with the drugs other than as a user. Moreover, there was no indication that Tennant had a prior criminal record. Tennant did not profit by his connec-

tion with drugs. Instead, the uncontroverted evidence showed that he, like most drug addicts, paid a heavy financial price for his failure to say "no" to drugs.

### 3. Possibility of Separating Property

The third prong of the instrumentality test (the possibility of separating offending property from the remainder) had no applicability to this case. Obviously, there was no possibility of dividing the Corvette into "offending" and "non-offending" parts.

Weighing the three factors, the trial judge ultimately opined, "[T]he application of the instrumentality test to the underlying facts of this case does not support forfeiture of the subject vehicle."

### B. The Proportionality Test

■■■ Proportionality, as that term is used here, does not include the necessity to compare forfeiture laws or practices of other jurisdictions—it means simply that there must be a comparison of the extent of the loss to the relevant factors involved, including the gravity and extent of the illegal activity, *the nexus between that conduct and the subject property,* and the extent of involvement of the owner—all to determine whether the "fine" is out of all reasonable proportion to the relevant factors.

*Aravanis,* 339 Md. at 665, 664 A.2d 888 (emphasis added).

As can be seen, the proportionality test also includes a nexus prong, which has been already discussed. This test also requires the trial judge to compare the extent of the loss to the property owner with (1) the gravity and extent of the illegal activity and (2) the extent of the involvement of the owner. Judge Leasure carefully examined both these factors. She found that the canceled checks from Tennant's business payable to Smith and Jackson only supported the inference that "substantial funds were expended to support ... Tennant's and/or his girlfriend's drug habits." As to the gravity of the offense, the court stressed that Tennant was not a distributor or manufacturer of illegal drugs. Moreover, in the

trial court's view, the value of the Corvette greatly exceeded the value of the drugs and drug paraphernalia that Tennant possessed when he was arrested. Lastly, the court found that the Corvette was not "substantially" used for "illegal purposes." She opined that forfeiture of the $20,000 vehicle was "out of all reasonable proportion to the relevant factors."

### C. Appellant's Arguments

Howard County makes four arguments in support of its contention that the judgment of the trial court should be reversed: (1) the trial court erred in not drawing an adverse inference from Tennant's invocation of the Fifth Amendment; (2) appellant had the burden of proof to show that forfeiture amounted to an excessive fine but failed to meet that burden; (3) the principles of *Aravanis* and *Austin, supra,* are inapplicable to cases involving forfeiture of personal property; and (4) assuming the *Aravanis* test is applicable, the trial court "unduly limited itself to the excessive fines cases without considering the facts of the . . . [subject] case or the statutory basis for [the] forfeiture."

▆▆▆▆ Appellant says in its brief,

The lower court compounded its error by refusing to consider the effect of Douglas Tennant's repeated assertion of the Fifth Amendment to questions about his drug use, the source of his drugs and the cars used in transporting and use of those drugs.[7] By the assertion of the Fifth Amendment privilege, an adverse inference is drawn and the [c]laimant is precluded from introducing evidence to challenge that inference. See *Whitaker v. Prince George's County,* 307 Md. 368, 514 A.2d 4 (1986).

---

**7.** Appellant does not say what inferences it wanted the trial judge to draw from the refusal to answer questions about "his drug use or the source of his drugs." Tennant admitted he was a heavy drug user. Given that admission, the source of his drugs would appear to be irrelevant in applying either the instrumentality or the proportionality test. Tennant did not refuse to answer any question "regarding the cars" he used in transporting the drugs he purchased; instead, he refused, on Fifth Amendment grounds, to answer questions as to whether he had used drugs while in the Corvette.

First of all, *Whitaker* does not hold, as appellant implies, that an adverse inference *must* be drawn merely because a witness invokes his or her Fifth Amendment privilege against self-incrimination. *See Whitaker,* 307 Md. at 385–87, 514 A.2d 4. The inference is merely permitted. *Id.* Moreover, the trial judge did not "refuse" to consider the effect of Tennant's invocation of his privilege against self-incrimination. Trial judges are presumed to know the law and to apply it correctly. *Beales v. State,* 329 Md. 263, 273, 619 A.2d 105 (1993). For obvious reasons, trial judges are not required to spell out every step used in their reasoning process to reach legal or factual conclusions. *See Doser v. Doser,* 106 Md.App. 329, 356, 664 A.2d 453 (1995).

Because a claim that forfeiture is an excessive fine is an affirmative defense, we agree with appellant's argument that appellee had the burden of proving excessiveness by a preponderance of evidence. *See United States v. 152 Char-Nor Manor Boulevard, Chestertown, Md.,* 922 F.Supp. 1064, 1071–72 (D.Md., 1996), *aff'd,* 114 F.3d 1178 (4th Cir.1997). This does not help appellant, however, because, taking the evidence in the light most favorable to Tennant, he met that initial burden by his testimony, coupled with the stipulation that the Corvette was worth approximately $20,000, and by appellant's own evidence, which supplied proof that would support the inference that the cocaine mentioned in the forfeiture petition was of minuscule value.

Appellant says in its brief that "[this] case does not involve an attempt to forfeit real property. In a strict sense, the principles of *Aravanis* and *Austin* are not applicable." Significantly, appellant fails to say why those cases are inapplicable or why the fact that the subject case does not involve real property is relevant. We hold that the principles set forth in *Aravanis* and *Austin* are applicable to cases, such as this one, dealing with personal property. Similarly, in *Thompson v. Grindle,* 113 Md.App. 477, 688 A.2d 466, *cert. granted,* 346 Md. 28, 694 A.2d 951, *cert. dismissed,* 348 Md. 198, 702 A.2d 1272 (1997), we applied *Aravanis*'s excessive

fines analysis to the forfeiture of a motor vehicle and other personal property. *Id.* at 485–86, 688 A.2d 466.

 Lastly, appellant contends:

Notwithstanding [the inapplicability of *Aravanis* and *Austin* ] ... the Court below unduly limited itself to the analysis of the excessive fines cases without considering the facts of this case, or the statutory basis for forfeiture (the seized asset, a car, facilitated the transportation of drugs). In so doing, it implicitly ruled that possession of controlled dangerous substances in a car can never be a basis for forfeiture, contrary to both statutory and existing case law. It is only in rare situations that forfeiture will be excessive in a constitutional sense. See *United States v. Wild,* 47 F.3d 669 (4th Cir.1995), interpreting *in personam* criminal forfeiture, pursuant to 21 U.S.C. § 853(a)(3).

Although it is true that the trial judge focused her attention on precedent dealing with the issue of excessive fines, this was understandable because that was the precise issue to be decided. The *Aravanis* case was authority that the trial court was bound to follow when interpreting and applying Article 25 of the Maryland Declaration of Rights. In applying the *Aravanis* test, the trial court explicitly recognized that the County had a statutory basis for the forfeiture of the vehicle and implicitly found that the County had established that statutory right. In fact, an "excessive fines" analysis is only necessary after the court finds that the sovereign has the statutory right to exact a "fine." The question the trial court addressed was whether enforcement of the forfeiture statute, under the circumstances of this case, violated a higher law, i.e., Article 25. In answering this question, the trial judge, contrary to appellant's assertion, did consider in detail "the facts of this case." [8] Moreover, the lower court clearly did not

---

8. Appellant points to no fact that the trial court failed to consider other than the fact that exhibits introduced by appellant showed the quantities of drugs found on Tennant's person. The trial judge said in her opinion that "there was no testimony presented regarding the quantity of drugs in [d]efendant [sic] possession at the time of his offense."

"implicitly rule[ ] that possession of controlled dangerous substances in a car can never be a basis for forfeiture." She applied the tests set forth in *Aravanis* and simply ruled that forfeiture was not warranted under the circumstances of this case.

Appellant's reliance on *Wild,* 47 F.3d at 675, is misplaced. In *Wild,* the Court refused to apply the instrumentality test set forth in *Chandler, supra,* because, unlike *Chandler,* the case dealt with a fine imposed as part of a criminal prosecution, i.e., an *in personam* criminal forfeiture pursuant to 21 U.S.C. § 853(a)(2) and (3). *Wild,* 47 F.3d at 675. Fines imposed in criminal forfeiture cases "are the equivalent of monetary punishment assessed against criminal defendants for the commission of some offense." *Id.* at 677. In contrast, the case at hand deals with a civil *in rem* proceeding where "[f]orfeitures are not favored." *Commercial Credit Corp. v. State,* 258 Md. 192, 199, 265 A.2d 748 (1970) (quoting 36 Am.Jur.2d, *Forfeitures and Penalties* § 8 (1968), and 3 J. Sutherland, *Statutory Construction* §§ 603–06 (3d ed. 1943)). Unlike the *Wild* Court, we are obliged to apply the *Chandler* test. *See Aravanis,* 339 Md. at 658, 664 A.2d 888.

## SUMMARY

The instrumentality test requires us to consider whether the relationship of Tennant's 1994 Corvette to the offenses committed by Tennant is close enough to render the property "guilty." The vehicle was purchased by Tennant by use of funds legitimately obtained, and he made no illicit profit by use of the Corvette. As in *Thompson, supra,* in which the police found a "small amount of cocaine and marijuana" in the pocket of a vehicle owner's shirt at the time of arrest, 113

---

While technically there was no testimony, there was *evidence* as to the quantity of drugs. Drug reports introduced by appellant showed that Tennant possessed 2.2 grams of heroin and .05 grams of cocaine. There was no direct evidence as to the value of the drugs. Appellant fails to point out in its brief how the trial court's lapse in overlooking the quantity of drugs might have made any difference in applying either the instrumentality or proportionality test.

Md.App. at 481, 688 A.2d 466, the relationship between the drugs mentioned in the forfeiture petition and Tennant's Corvette was "incidental and fortuitous." *Id.* at 489, 688 A.2d 466. This situation contrasts sharply from one where the vehicle owner uses the vehicle to distribute drugs or uses the vehicle as a place from which to make drug sales.

Giving deference as we must to the factual findings of the trial judge, Md.Rule 8–131(c), we hold that the trial judge was not clearly erroneous when she applied the instrumentality test and found, in effect, that the vehicle was "not guilty." As for the proportionality test, it is significant that the drugs possessed by Tennant were in small enough quantities that he was not charged with possession with intent to distribute. He was charged, instead, with two relatively minor misdemeanors. Ultimately his convictions were stricken, and a sentence of probation before verdict imposed. In the grand scheme of things, Tennant's crime was not grave; the value of Tennant's car was great, and it is likely that the County coveted the car for that reason.[9] The trial court was not clearly erroneous in holding that the forfeiture of the $20,000 vehicle was "out of all reasonable proportion" when compared to "the relevant factors."

**JUDGMENT AFFIRMED; COST TO BE PAID BY APPELLANT.**

---

**9.** That the County's decision to seek forfeiture was probably based on its eagerness to acquire a valuable car rather than on other factors can be inferred from the fact that the County filed its forfeiture complaint before it received test results of the controlled dangerous substance found on appellant's person and thus before it knew what, if any, drugs were transported in the Corvette.